# Exhibit A

JAMES C. ALLEN (SBN 105283)
DAVID SEMELSBERGER (SBN 103803)
JESSICA S. TAYLOR (SBN 294363)
ALLEN, SEMELSBERGER & KAELIN, LLP
600 "B" Street, Suite 2400
San Diego, California 92101
P: (619) 544-0123/F: (877) 468-0677
jallen@asklawgroup.com
dsemels@asklawgroup.com
jtaylor@asklawgroup.com

Attorneys for Plaintiffs
MONICA GONZALEZ, et al.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO (CENTRAL DIVISION)

| | |
|---|---|
| MONICA GONZALEZ DELACRUZ, GUADALUPE VEGA M., ALVARO ESCOBAR BAZAN, MAGDA YEPEZ ROMERO ADRIANA ALATORRE, RAUL OSORIO NUÑEZ, ALEJANDRA GARCIA M., SAUL PALACIOS AMEZCUA, FRANCISCO AVILA ROBLES, MARIA ISABEL SOTO, BALBINA RAMIREZ, RIGOBERTO VALENCIA FUENTES, MA. MERCEDES RAMIREZ, JUAN GONZALEZ, ALMA PEREZ, CARLOS NIEBLAS, CARLOS ARMANDO NIEBLAS VALENZUELA, MARTHA VALENZUELA, YESICA CORONA, BLANCA PIÑEDA, MARIA ENCARNACION V., VICENTE OLEA GALEANA, SILVIA RAMIREZ, MARIA HERALDEZ, JOSE TORRES, SADIE TORRES, NANCY PONCE ROMERO, VENICIA BRACAMONTES, APOLINAR GUTIERREZ, MARTIN RAMIREZ RIVAS, KARLA SILVA, IRMA TORRES, MARIA TINOCO, RUMALDO TINOCO, **ADDITIONAL PARTIES LISTED ON THE FOLLOWING PAGE** | CASE NO. 37-2017-00008348-CU-BT-CTL<br><br>(GENERAL CIVIL CASE)<br><br>Assigned to for all purposes: Hon. Eddie Sturgeon<br>Dept. C-67<br><br>**THIRD AMENDED COMPLAINT FOR:**<br><br>**(1) NUISANCE,**<br>**(2) BREACH OF CONTRACT,**<br>**(3) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING,**<br>**(4) INTENTIONAL INTERFERENCE WITH PROPERTY RIGHTS**<br>**(5) NEGLIGENCE,**<br>**(6) BREACH OF STATUTES,**<br>**(7) BREACH OF WARRANTY OF HABITABILITY,**<br>**(8) BREACH OF COVENANT OF QUIET ENJOYMENT,**<br>**(9) BREACH OF UNFAIR COMPETITION LAW, AND,**<br>**(10) DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Complaint Filed:    03/08/17<br>Trial Date:    11/01/19 |

I:\0054.001\Pleadings 001\FTM\015 Third Amended Complaint.wpd

PLAINTIFFS' THIRD AMENDED COMPLAINT

EDGAR YANEZ,
LUIS CARLOS GONZALEZ,
JOSE LUIS SANCHEZ,
TRINIDAD I. CALLEROS,
HORACIO RODRIGUEZ,
GABRIEL ECHEVERRIA,
ARACELI RODRIGUEZ,
FRANCISCO HERERRA V.,
WENDY MARCIAL E.,
JOSE DELGADO CORRALES
XIOMARA ORTIZ,
MARIA DORAME,
GUSTAVO BERNAL,
CELINA TAPIA,
LORENA RAMIREZ RUIZ,
NOE AGUILAR,
ANA RAMOS,
EUSTOLIA SILVA,
JESUS SILVA,
GUADALUPE IBARRA,
JOSE BERNARDO IBARRA,
LUIS FLORES,
ANGELINA ALVARADO,
IGNACIO ARELLANO MEDRANO,
CLAUDIA BARRANCO,
ROSALIA DIAZ,
ROGER MUÑOZ,
DANIEL PERALTA,
MARISOL PERALTA,
DOLORES SAN MARTIN,

    Plaintiffs,

v.

ACACIA MOBILE HOME PARK LLC, A
CALIFORNIA CORPORATION,
PACIFICA SE SD, LLC, A LIMITED
LIABILITY CORPORATION, RODEO
FUNDING GROUP, LLC, A LIMITED
LIABILITY CORPORATION, YOLANDA
MARTINEZ, AND DOES 1-100,
INCLUSIVE,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

AND RELATED CROSS-ACTIONS.

I:\0054.001\Pleadings 001\FTM\015 Third Amended Complaint.wpd

PLAINTIFFS' THIRD AMENDED COMPLAINT

PLAINTIFFS ALLEGE:

## **COMMON ALLEGATIONS**

1.    Plaintiffs are current and former residents of and/or owners of mobilehomes located in Acacia Mobile Home Park ("the Park"), located at 365 54th Street, San Diego, California, 92114.

2.    At all relevant times herein, Plaintiffs MONICA GONZALEZ DELACRUZ, GUADALUPE VEGA M., ALVARO ESCOBAR BAZAN, MAGDA YEPEZ ROMERO, ADRIANA ALATORRE, RAUL OSORIO NUÑEZ, ALEJANDRA GARCIA M., SAUL PALACIOS AMEZCUA, FRANCISCO AVILA ROBLES, MARIA ISABEL SOTO, BALBINA RAMIREZ, RIGOBERTO VALENCIA FUENTES, MA. MERCEDES RAMIREZ, JUAN GONZALEZ, ALMA PEREZ, CARLOS NIEBLAS, CARLOS ARMANDO NIEBLAS VALENZUELA, MARTHA VALENZUELA, YESICA CORONA, BLANCA PiÑEDA, MARIA ENCARNACION V., VICENTE OLEA GALEANA, SILVIA RAMIREZ, MARIA HERALDEZ, JOSE TORRES, SADIE TORRES, NANCY PONCE ROMERO, VENICIA BRACAMONTES, APOLINAR GUTIERREZ, MARTIN RAMIREZ RIVAS, KARLA SILVA, IRMA TORRES, MARIA TINOCO, RUMALDO TINOCO, EDGAR YANEZ, LUIS CARLOS GONZALEZ, JOSE LUIS SANCHEZ, TRINIDAD I. CALLEROS, HORACIO RODRIGUEZ, GABRIEL ECHEVERRIA, ARACELI RODRIGUEZ, FRANCISCO HERERRA V., WENDY MARCIAL E., JOSE DELGADO CORRALES, XIOMARA ORTIZ, MARIA DORAME, GUSTAVO BERNAL, CELINA TAPIA, LORENA RAMIREZ RUIZ, NOE AGUILAR, ANA RAMOS, EUSTOLIA SILVA, JESUS SILVA, GUADALUPE IBARRA, JOSE BERNARDO IBARRA, LUIS FLORES, ANGELINA ALVARADO, IGNACIO ARELLANO MEDRANO, CLAUDIA BARRANCO, ROSALIA DIAZ, ROGER MUÑOZ, DANIEL PERALTA, MARISOL PERALTA, and DOLORES SAN MARTIN are or were resident(s) of, have or had a tenancy in the Park and/or an ownership interest in a mobilehome or travel trailer located in the Park during the relevant time period.

3.    Plaintiffs ADRIANA ALATORRE, RAUL OSORIO NUNEZ (beginning in November 2005), DOLORES SAN MARTIN (beginning in January 2011), and LORENA RAMIREZ RUIZ (beginning in July 2012) began their tenancies in the Park and leased a mobilehome or travel trailer from Defendants RODEO FUNDING GROUP, LLC ("RODEO") and

ACACIA MOBILE HOME PARK, LLC ("ACACIA") f/k/a PACIFICA SE SD, LLC ("PACIFICA") during the relevant time period. ADRIANA ALATORRE, RAUL OSORIO NUNEZ, and DOLORES SAN MARTIN continue to lease their travel trailers from ACACIA through the present. LORENA RAMIREZ RUIZ stopped leasing her original travel trailer from ACACIA in December 2018. In January 2019, obtained title to and moved into another travel trailer in the Park where she continues to reside through the present.

4.    MARIA ENCARNACION V. and JUAN GONZALEZ began their tenancies in the Park in August 2015 and April 2016, respectively, after RODEO had transferred its ownership and operation to Defendants PACIFICA and ACACIA. These Plaintiffs do not make any claims against RODEO.

5.    The amount in controversy is within the jurisdiction of this Court.

6.    Plaintiffs are informed and believe and thereon allege that Defendant RODEO is a Limited Liability Company organized under the laws of the State of California, with its principal place of business at all relevant times in San Diego, California. RODEO owned, operated and managed the Park between January 19, 2010 and July 19, 2015.

7.    Plaintiffs are further informed and believe that RODEO's officer, director, managing member, and sole owner is JOSEPH SHABANI.

8.    Plaintiffs are informed and believe and thereon allege that Defendant YOLANDA MARTINEZ is a resident of San Diego, California and was an employee, agent, or managing agent of RODEO, and in that capacity, was personally involved in Park management and operation during the period of time RODEO owned and operated the Park.

9.    Plaintiffs are informed and believe and thereon allege that PACIFICA SE SD, LLC ("PACIFICA") is a Limited Liability Company organized under the laws of the State of California, with its principal place of business at all relevant times in San Diego, California. PACIFICA's ownership, operation and management of the Park began on or about July 20, 2015.

10.    On or about July 27, 2015, PACIFICA changed its name to ACACIA MOBILE HOME PARK, LLC. ACACIA f/k/a PACIFICA has owned, operated and managed the Park from July 20, 2015 to the present.

11. Plaintiffs are further informed and believe that ACACIA and PACIFICA's officer, director, president, managing partner, and sole owner is DEEPAK ISRANI. DEEPAK ISRANI is is responsible for development, financing and asset management at the Park.

12. Plaintiffs do not know the true names, involvement or capacities of Defendants DOES 1 through 50, and therefore sue them by such fictitious names. Plaintiffs are informed and believe that each DOE Defendant is in some way responsible for Plaintiffs' damages herein. Plaintiffs will amend this Complaint when they learn the true names, involvement and capacities of the Defendant DOES.

13. Plaintiffs are informed and believe that at all times herein each Defendant was the agent, servant, employee or alter-ego of the remaining Defendants, or acted with their consent, ratification and authorization, and in doing the acts hereinafter alleged, each Defendant acted in such capacity with respect to the remaining Defendants. "Management" as alleged in this Complaint means the agents or employees of Defendants.

14. Unless otherwise noted, the acts, omissions and breaches of Defendant RODEO and YOLANDA MARTINEZ occurred repeatedly and continuously through July 19, 2015. Unless otherwise noted , Defendants PACIFICA and ACACIA's acts, omissions, and breaches alleged herein have occurred continuously and continue to occur from July 20, 2015 through the present.

**ALLEGATIONS RE: THE ADDITIONS**

**BY CERTAIN PLAINTIFFS AGAINST RODEO, YOLANDA MARTINEZ, & DOE DEFENDANTS 1-50**

15. Plaintiffs reallege paragraphs 1 through 14.

16. The following Plaintiffs make allegations regarding home additions against RODEO, YOLANDA MARTINEZ and Doe Defendants 1 through 50: NOE AGUILAR, ADRIANA ALATORRE, RAUL OSORIO NUÑEZ, FRANCISCO AVILA ROBLES, MARIA ISABEL SOTO, VENICIA BRACAMONTES, APOLINAR GUTIERREZ, TRINIDAD CALLEROS, HORACIO RODRIGUEZ, ALEJANDRA GARCIA M., SAUL PALACIOS AMEZCUA, MARIA HERALDEZ, FRANCISCO HERERRA V., WENDY MARCIAL E., CARLOS NIEBLAS, CARLOS ARMANDO NIEBLAS VALENZUELA, MARTHA VALENZUELA, VICENTE OLEA

GALEANA, BLANCA PIŇEDA, MARTIN RAMIREZ RIVAS, KARLA SILVA, BALBINA RAMIREZ, RIGOBERTO VALENCIA FUENTES, MA. MERCEDEES RAMIREZ, SILVIA RAMIREZ, JOSE LUIS SANCHEZ, JESUS SILVA, EUSTOLIA SILVA, MARIA TINOCO, RUMALDO TINOCO, GUADALUPE VEGA M., CLAUDIA BARRANCO, DOLORES SAN MARTIN.

17. At all times during RODEO's ownership and operation of the Park (from January 19, 2010 to July 19, 2015), RODEO, YOLANDA MARTINEZ, and Doe Defendants 1 through 50 as owners, operators and managers of the Park were aware of the building code, and mobile home park regulations that govern the type of additions and structures allowed within a Mobile Home Park.

18. At all times during RODEO's ownership and operation of the Park, Plaintiffs requested permission from JOSEPH SHABANI as an officer, director, managing member, and sole owner of RODEO, YOLANDA MARTINEZ in her capacity as RODEO's agent and Park manager, and Doe Defendants 1 through 50 as RODEO agents and employees, to make certain modifications and additions to their mobile homes or travel trailers and spaces, including the construction of carports, room additions, storage and living additions and other modifications ("the Additions").

19. Through their affirmative words and verbal representations, JOSEPH SHABANI as an officer, director, managing member, and sole owner of RODEO, YOLANDA MARTINEZ, and Doe Defendants 1 through 50 as RODEO agents and employees gave their explicit permission and approval to Plaintiffs to make the Additions.

20. JOSEPH SHABANI in his capacity as an officer, director, managing member, and sole owner of RODEO, YOLANDA MARTINEZ in her capacity as RODEO's agent and Park manager, and Doe Defendants 1 through 50 as RODEO agents and employees' actions in authorizing the Additions misled Plaintiffs to expend time and resources in building the Additions.

21. Plaintiffs did not know that the Additions violated applicable building codes and state regulations concerning mobile homes/travel trailers.

22. JOSEPH SHABANI in his capacity as an officer, director, managing member, and sole owner of RODEO, YOLANDA MARTINEZ in her capacity as RODEO's agent and Park manager, and Doe Defendants 1 through 50 as RODEO agents and employees knew that the

Additions violated applicable building codes and state regulations concerning mobile homes and that permits were necessary before constructing said Additions.

23. YOLANDA MARTINEZ in her capacity as RODEO's agent and Park manager also charged the Plaintiffs identified in ¶ 16 monetary sums to make the Additions.

24. Upon information and belief, JOSEPH SHABANI in his capacity as an officer, director, managing member, and sole owner of RODEO, YOLANDA MARTINEZ in her capacity as RODEO's agent and Park manager, and Doe Defendants 1 through 50 as RODEO agents and employees, were notified by the City of San Diego that they were causing or creating building code, permit, and regulatory violations in the Park arising from the Additions.

25. JOSEPH SHABANI in his capacity as an officer, director, managing member, and sole owner of RODEO, YOLANDA MARTINEZ in her capacity as RODEO's agent and Park manager, and Doe Defendants 1 through 50 as RODEO agents and employees, served Plaintiffs in ¶ 16 notices to remove the additions or potentially be evicted.

26. On or about April 25, 2015, JOSEPH SHABANI in his capacity as an officer, director, managing member, and sole owner of RODEO, YOLANDA MARTINEZ in her capacity as RODEO's agent and Park manager, and Doe Defendants 1 through 50 as RODEO agents and employees, held an in-person meeting with Plaintiffs regarding the Additions and the habitability related issues identified in ¶¶ 34-36 below. JOSEPH SHABANI in his capacity as an officer, director, managing member, and sole owner of RODEO, YOLANDA MARTINEZ in her capacity as RODEO's agent and Park manager, and Doe Defendants 1 through 50 as RODEO agents and employees, informed Plaintiffs that they would assist Plaintiffs with obtaining necessary building permits for the Additions to the mobile homes and mobile home spaces of Plaintiffs and that the problems in ¶¶ 34-36 below would be resolved.

27. JOSEPH SHABANI in his capacity as an officer, director, managing member, and sole owner of RODEO, YOLANDA MARTINEZ in her capacity as RODEO's agent and Park manager, and Doe Defendants 1 through 50 as RODEO agents and employees, never assisted Plaintiffs in obtaining the building permits they needed for the Additions to comply with local government codes and regulations.

28.    Upon information and belief, JOSEPH SHABANI in his capacity as an officer, director, managing member, and sole owner of RODEO, YOLANDA MARTINEZ in her capacity as RODEO's agent and Park manager, and Doe Defendants 1 through 50 as RODEO agents and employees, never intended to assist Plaintiffs in obtaining the building permits they needed for the Additions to be in compliance with local government codes and regulations. JOSEPH SHABANI in his capacity as an officer, director, managing member, and sole owner of RODEO, YOLANDA MARTINEZ in her capacity as RODEO's agent and Park manager, and Doe Defendants 1 through 50 as RODEO agents and employees, also did not make the promised repairs to the Park's utility infrastructure to resolve and prevent continued sewer and electricity problems, among other things.

29.    On or about July 19, 2015, JOSEPH SHABANI in his capacity as an officer, director, managing member, and sole owner of RODEO sold the Park to a third party without following through with any of the aforementioned promises and representations made to Plaintiffs.

30.    Furthermore, through their conduct, JOSEPH SHABANI in his capacity as an officer, director, managing member, and sole owner of RODEO, YOLANDA MARTINEZ in her capacity as RODEO's agent and Park manager, and Doe Defendants 1 through 50 as RODEO agents and employees, gave their implicit permission and approval to Plaintiffs to make and maintain the Additions to their mobile homes and units.

31.    JOSEPH SHABANI in his capacity as an officer, director, managing member, and sole owner of RODEO, YOLANDA MARTINEZ in her capacity as RODEO's agent and Park manager, and Doe Defendants 1 through 50 as RODEO agents and employees, knew or should have known that the Additions violated applicable California law.

32.    JOSEPH SHABANI in his capacity as an officer, director, managing member, and sole owner of RODEO, YOLANDA MARTINEZ in her capacity as RODEO's agent and Park manager, and Doe Defendants 1 through 50 as RODEO agents and employees, willfully and consciously allowed Plaintiffs to make and maintain the Additions despite their knowledge that the Additions violated applicable California law. JOSEPH SHABANI in his capacity as an officer, director, managing member, and sole owner of RODEO expressly authorized Plaintiffs to construct the foregoing Additions and authorized and ratified the known conduct of YOLANDA MARTINEZ,

ELIZABETH RODRIGUEZ or Doe Defendants 1 through 50 as RODEO agents and employees allowing construction of the Additions.

## FIRST CAUSE OF ACTION
### NUISANCE
### BY PLAINTIFFS AGAINST RODEO, ACACIA & PACIFICA

33.   Plaintiffs reallege paragraphs 1 through 32.

34.   Identities of Plaintiffs asserting a cause of action for nuisance:

a.   All Plaintiffs except MARIA ENCARNACION V. and JUAN GONZALEZ assert a cause of action for nuisance against RODEO for the following acts and omissions which occurred at all relevant times during RODEO's period of Park ownership/operation (from January 19, 2010 to July 19, 2015).

b.   All Plaintiffs including MARIA ENCARNACION V. and JUAN GONZALEZ assert a cause of action for nuisance against ACACIA and PACIFICA for the following acts and omissions which occurred at all relevant times during their period of Park ownership/operation (from July 20, 2015 through the present).

35.   During their respective periods of Park ownership and operation — with RODEO owning/operating the Park from January 19, 2010 to July 19, 2015 and ACACIA and PACIFICA owning/operating the Park from July 20, 2015 through the present — Defendants each maintained a nuisance on their property – the Park – and breached their duties to Plaintiffs by substantially failing to provide and maintain the Park's common areas, facilities, services, and physical improvements in good working order and condition and by reducing services, including, but not limited to the following failures by Defendants which some or all Plaintiffs have experienced:

(a)   failing to maintain, service, repair and maintain in proper working condition the sewer system, causing sewage backups in homes, sewage overflows or spills in the Park, streets, spaces, or near homes; the smell of sewage, sewer odors, difficulty with or slow flushing toilets, leaks, stoppages or back flows, and failing to clean up sewage spills resulting in unsanitary conditions, damage to homes and property;

///

///

I:\0054.001\Pleadings 001\FTM\015 Third Amended Complaint.wpd     - 7 -

(b)    overcharging for water and sewer while failing to maintain, repair and to provide adequate street drainage thereby causing water to accumulate in the streets and on spaces during and after rainfall which create unsanitary and potentially hazardous conditions;

(c)    failing to provide potable sanitary drinking water in violation of Civil Code § 798.40, Civil Code § 798.41.; Civil Code § 798.42; 25 CCR § 1102, §1116, Section 18300.

(d)    failing to maintain, repair and to provide adequate so as to provide adequate and code compliant electricity or to ensure that the Park residents have appropriate and legal electrical hookups resulting in power outages, burnouts, power surges, flickering and dimming lights, insufficient electrical power, exposed or inadequately covered and maintained electrical wires, resulting in safety hazards, and property damage;

(e)    failing to properly charge Plaintiffs for their electrical charges in violation of 25 CCR § 1108, Section 18300, Health and Safety Code. Reference: Sections 18602, 18620, 18640, and 18670.

(f)    failure to maintain and repair the slopes in the Park resulting in erosion and damage to property, streets with pot holes, cracks, depressions, bumps, crumbling asphalt and inadequate resurfacing of streets and driveways making it difficult for residents to walk and creating a safety hazard;

(g)    failure to provide and maintain appropriate safe levels of street lighting in the Park, including common areas, which leads to increased criminal activity, vandalism and other safety hazards in violation of 25 CCR § 1108, Section 18300, Health and Safety Code. Reference: Sections 18602, 18620 and 18640, Health and Safety Code

(h)    failing to maintain the trees, bushes and landscaping resulting in damage to homes, driveways, and personal property, overgrown weeds in violation of Civil Code § 798.15(d), Civil Code § 798.37.5(a), Civil Code § 798.37.5(b)

(i)    failing to provide, maintain and service appropriate laundry equipment, in violation of Civil Code § 798.15(f).

///

///

I:\0054.001\Pleadings 001\FTM\015 Third Amended Complaint.wpd                    - 8 -

(j)    lack of maintenance of trash area, and/or inadequate number of containers resulting in frequent trash overflow, scattered debris, trash area emits a foul odor; inadequate pickup of trash such as residents' driveways are completely blocked by trashcans full of live roaches and rats that residents must move personally exposing themselves to health and personal injury risks in order to be able to leave for work, trash cans lined up so close to homes that roaches and rats climb inside residents' homes through vents causing residents to tape up their vents in violation of Civil Code § 798.87, 25 CCR § 1102, 25 California Code of Regulations§ 1120, Section 18300, Health and Safety Code

(k)    failing to provide and maintain sufficient public restrooms in violation of 25 CCR § 1112, Section 18300, Health and Safety Code. Reference: Sections 18620, 18630 and 18640.

(l)    failing to provide and maintain the Park clubhouse and surrounding common area in violation of Civil Code § 798.15(f), Civil Code § 798.24, Civil Code § 798.51, 25 CCR § 1112, Section 18300, Health and Safety Code. Reference: Sections 18620, 18630 and 18640.

(n) failing to maintain adequate storage area for the residents in violation of Civil Code § 798.87, 25 CCR § 1102; 25 CCR § 1120, Section 18300, Health and Safety Code. Reference: Sections 18610 and 18691, Health and Safety Code.

(m)    failing to maintain and repair the Park perimeter fences resulting in large holes or gaps left unattended which in turn cause security problems such as access by a known nearby homeless population, burglaries, vandalism, stray dogs in violation of 25 CCR § 1102, Section 18300 and 18601 of the Health and Safety Code and 25 CCR § 1114.

(n)    failing to maintain adequate storage areas for Plaintiffs in violation of Civil Code § 798.87, 25 CCR § 1102; 25 CCR § 1120, Section 18300, Health and Safety Code;

(o)    failing to provide adequate playground area for children in violation of Civil Code § §§ 798.15(d), 798.37.5(a), 798.37.5(b).

(p)    failing to collect debris and trash present throughout the park,

(q)    failing to provide a safe environment or adequate security measures resulting in vacant trailers, squatter's vagrancy and illegal drug use in violation of Civil Code § 798.87, 25 CCR §§ 1102, 1120, Health and Safety Code§ 18300;

- 9 -

(r)    responding to Plaintiffs' complaints with indifference or retaliatory measures demonstrating a conscious disregard for the safety, well-being and quiet enjoyment of the Park and their respective leaseholds in violation of Civil Codes §§ 798.15(i)(7), 798.26(b);

(s)    failing to properly maintain and manage the Park resulting in financial losses to the Plaintiffs' and an inability for Plaintiffs to sell their mobile homes is in violation of Civil Code § 798.87, 25 CCR §§ 1102, 1120, Health and Safety Code§§ 18610, 18691.

(t)    Defendants disregard Plaintiffs' safety and demonstrate a lack of concern for Plaintiffs and their needs.

(u)    Defendants are regularly unavailable and/or refuse to respond to Plaintiffs' complaints. When Plaintiffs complain, Defendants harass them.

(v).    Defendants do not equally and/or uniformly enforce Park rules and regulations.

(w).    Defendants interfered with the use and enjoyment of Plaintiffs' leaseholds and homes by, *inter alia,* their unauthorized entries onto leased mobile home spaces and homes.

(x).    Defendants increase rent and utility fees without proper prior notice. The lack of proper management has resulted in overcharges or improper billing for utilities.

(y).    Defendants refuse to make repairs delay making repairs. Repairs by Defendants are done poorly or incorrectly.

(z).    Defendants removed Park facilities and decreased services. Deterioration of Park infrastructure and Park appearance despite increases in rent has resulted in difficulty and/or inability to sell homes.

36.    With respect to the Plaintiffs identified in ¶ 16, the Additions to their respective dwelling units are alleged to be in violation of applicable codes and regulations based on the absence of permits that JOSEPH SHABANI in his capacity as an officer, director, managing member, and sole owner of RODEO, YOLANDA MARTINEZ in her capacity as RODEO's agent and Park manager, and Doe Defendants 1 through 50 as RODEO agents and employees, promised to obtain for Plaintiffs.

///

///

I:\0054.001\Pleadings 001\FTM\015 Third Amended Complaint.wpd    - 10 -

37.    On December 21, 2016, Plaintiffs served Defendants and/or their agent(s) with their Notice of Intention to commence this action. This Notice and its service complies with Civ. Code § 798.84. A copy of this Notice and the proof(s) of service are attached as Exhibit "A." The allegations of the Notice are incorporated by reference as if fully set forth herein.

38.    By substantially failing to provide and maintain the Park as set forth herein and in paragraphs 35-37, Defendants created and maintained both a private and a public nuisance at common law and under Civ. Code § 798.87 during their respective periods of park ownership/operation (RODEO's period of Park ownership/operation from January 19, 2010 to July 19, 2015 and ACACIA and PACIFICA's period of Park ownership/operation from July 20, 2015 through the present).

39.    As a proximate result of Defendants' creation and maintenance of a nuisance and failure to provide and maintain as set forth herein during their respective periods of Park ownership/operation, Plaintiffs have suffered general and special damages including a leasehold worth less than the rent they paid, overpayment of rent and other charges, mental suffering and emotional distress, annoyance, discomfort, bodily and personal injury, medical expenses, property damage, repair costs, loss of use and enjoyment of their homes and the Park, which damages are different in kind from those suffered by the general public. Further all Plaintiffs who own their respective dwelling units also suffered diminution in value of their homes because of the foregoing.

40.    Plaintiffs notified Defendants of the foregoing conditions and made numerous complaints to RODEO, ACACIA, PACIFICA, YOLANDA MARTINEZ, JOSEPH SHABANI, and DEEPAK ISRANI, the managers and employees of Defendants during their respective periods of Park ownership/operation, including ROSALINDA BLACKMAN, and local governmental agencies about Defendants' failure to provide and maintain the Park's common areas, facilities and physical improvements in good working order.

41.    Between January 19, 2010 and July 19, 2015, JOSEPH SHABANI as RODEO's officer, director, managing member, and sole owner was personally aware of the problems in the Park identified in ¶¶ 34-36 through notices provided by Plaintiffs and RODEO employees. He also presented to the Park every quarter from 2010 to 2015 to inspect the Park and view its conditions

which further placed him on actual notice of the poor Park conditions.

42. Based on the foregoing, JOSEPH SHABANI as RODEO's officer, director, managing member, and sole owner was personally aware of the following:

a. the Park's sewer system is failing causing sewage to back-up in or spill around Plaintiffs' homes, lots and in common areas; the sewage spills expose Plaintiffs to serious health hazards and can cause personal and bodily injury; Plaintiffs have to live with the constant, unbearable stench of sewage in the Park;

b. the water is not potable, should not be used for drinking, and can cause illnesses in the Plaintiffs;

c. the electric system is inadequate and presents the danger or risk of physical shock and mobilehomes catching fire;

d. the Park has poor drainage causing land movement and subsidence resulting in unleveling, sinking and damage to some homes and spaces, and differential settlement of Plaintiffs' lots causing damage to Plaintiffs' homes, property and driveways;

e. the lack of security and inadequate lighting endanger the safety of Plaintiffs and their families;

f. The Additions JOSEPH SHABANI expressly authorized or later approved and ratified, violated applicable building codes and state regulations concerning mobile homes and that permits were necessary before constructing said Additions; and

g. Park conditions create health and safety hazards for Plaintiffs and their families.

43. During the April 25, 2015 meeting with Plaintiffs, RODEO by and though its officer, director, managing member, and sole owner, JOSEPH SHABANI, promised to rectify these known defects and repair or replace the Park's utility infrastructure. However, JOSEPH SHABANI as RODEO's officer, director, managing member, and sole owner, had the financial ability to repair these problems, but chose to ignore them and refused to fix or remedy these problems. Instead, he sold the Park to ACACIA f/k/a PACIFICA without making any repairs.

44. Between July 20, 2015 and the present, DEEPAK ISRANI, as the officer, director, managing member, and sole owner of ACACIA and PACIFICA was personally aware of the

problems in the Park identified in ¶¶ 34-36 through notices provided directly to him by Plaintiffs and ACACIA and PACIFICA's employees, including ROSALINDA BLACKMAN and an unidentified DOE 1 Defendant. Though a complete summary of the notices and complaints is exhaustive and overly burdensome to identify in this Third Amended Complaint, examples of the foregoing are as follows:

a. In March 2016, ACACIA and PACIFICA obtained an unfavorable judgment against them in an unlawful detainer action filed against Plaintiff Monica Gonzalez Delacruz wherein Judge Pressman found the Park was uninhabitable and that rent going forward would be substantially reduced to $100/month.

b. In November 2016, ACACIA and PACIFICA were cited by San Diego Code Enforcement for sewage related violations which notes that a number of other active cases regarding similar problems in the Park were pending at that time.

c. From July 20, 2015 to the present, Plaintiffs reported severe electricity and sewage problems to Park manager, ROSALINDA BLACKMAN. Plaintiffs are informed and believe that she notified DEEPAK ISRANI of said complaints, and that DEEPAK ISRANI refused to make any repairs because of associated costs.

45. Based on the foregoing, DEEPAK ISRANI, as the officer, director, managing member, and sole owner of ACACIA and PACIFICA was personally aware of the following:

a. the Park's sewer system is failing causing sewage to back-up in or spill around Plaintiffs' homes, lots and in common areas; the sewage spills expose Plaintiffs to serious health hazards and can cause personal and bodily injury; Plaintiffs have to live with the constant, unbearable stench of sewage in the Park;

b. the water is not potable, should not be used for drinking, and can cause illnesses in the Plaintiffs;

c. the electric system is inadequate and presents the danger or risk of physical shock and mobilehomes catching fire;

d. the Park has poor drainage causing land movement and subsidence resulting in unleveling, sinking and damage to some homes and spaces, and differential settlement of Plaintiffs'

lots causing damage to Plaintiffs' homes, property and driveways;

e.     the lack of security and inadequate lighting endanger the safety of Plaintiffs and their families; and

f.     Park conditions create health and safety hazards for Plaintiffs and their families.

46.     DEEPAK ISRANI, as the officer, director, managing member, and sole owner of ACACIA and PACIFICA, had the financial ability to repair these problems, but chose to ignore them and refused to fix or remedy these problems

47.     From January 19, 2010 and July 19, 2015, RODEO forced Plaintiffs to live in filth and degradation by ignoring these conditions. RODEO had the financial ability to abate and remedy the above problems, but out of greed deliberately chose to let Plaintiffs suffer rather than make any repairs. By forcing Plaintiffs to live in unhealthful and unsafe conditions, RODEO subjected them to cruel and unjust hardship in conscious disregard of Plaintiffs' rights. When Plaintiffs sought to assert their rights, RODEO retaliated by harassing Plaintiffs through various actions including threatening to evict them. By ignoring Park problems, RODEO consciously disregarded Plaintiffs' rights and safety. RODEO acted despicably by treating Plaintiffs as mere chattel. RODEO's conduct above was carried on with a willful and conscious disregard of Plaintiffs' rights and safety. RODEO's conduct warrants an award of punitive damages because its despicable conduct subjected Plaintiffs to cruel and unjust hardship in knowing disregard of Plaintiffs' rights and/or constitutes malice as defined in Civil Code section 3294. RODEO is liable for punitive damages because its officer, director, managing member, and sole owner, JOSEPH SHABANI, knew of the despicable conduct constituting malice or oppression and adopted or approved that conduct after it occurred; the conduct constituting malice or oppression was authorized by RODEO's managing agent JOSEPH SHABANI, or the conduct constituting malice or oppression was committed by JOSEPH SHABANI, as RODEO's managing agent. In the alternative, Plaintiffs request statutory penalties for each willful violation of Civil Code sections 798 *et seq.* by RODEO and its management.

48.     RODEO is further liable for punitive damages pursuant to Cal. Civ. Code §§ 3294 because its officer, director, managing member, and sole owner, JOSEPH SHABANI was negligent in hiring Park agents and employees, including YOLANDA MARTINEZ, ELIZABETH

RODRIGUEZ, and maintenance person(s) DOE DEFENDANT 1, none of whom were properly trained to address Park maintenance, problems, and health and safety hazards in the Park and as such were unfit for their jobs. JOSEPH SHABANI failed to train and direct his employees to protect residents from harm by substantially failing to provide and maintain the Park in good working order and condition. The employees were not trained by JOSEPH SHABANI to detect unsafe or dangerous conditions, and Plaintiffs are informed and believe were instructed by JOSEPH SHABANI to avoid involvement in the Park residents' safety needs or even to inquire about potential safety concerns. RODEO's managing agent, JOSEPH SHABANI, who decides what maintenance and repairs are to be done at the Park, and is ultimately responsible to make the Park safe did not properly train and supervise RODEO's employees to provide safety and health awareness and protection to prevent low income tenants from being harmed. RODEO's managing agent JOSEPH SHABANI adopted and/or approved RODEO's employees' conduct after it occurred by accepting what they did without any reprimand or changing the manner and procedures by which its employees perform in similar situations such as the ones involving Plaintiffs. RODEO is guilty of malice in that its conduct was despicable conduct which was carried on with a willful and conscious disregard of the rights and safety of Plaintiffs. Also, RODEO is guilty of oppression because its conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing and/or conscious disregard of their rights and safety. RODEO's managing agent JOSEPH SHABANI adopted and approved the conduct alleged herein by not changing RODEO's methods and procedures even though Plaintiffs were injured as a result of its failure to act. Under Civil Code §3294, punitive damages can be assessed against RODEO in these circumstances because RODEO had advance knowledge of the unfitness of one or more of its employees, including YOLANDA MARTINEZ, ELIZABETH RODRIGUEZ, and maintenance person(s) DOE 1, and employed them in conscious disregard of the rights and safety of Plaintiffs. Plaintiffs are informed and believe and thereon allege, to protect RODEO's monetary assets over the health and safety of Plaintiffs, RODEO engaged in despicable conduct in conscious disregard of Plaintiffs' rights to health and safety. RODEO engaged in conduct from which it knew or should have known it was highly probable harm to Plaintiffs would result. Pursuant to Cal. Civ. Code §§ 3294 and 798.86, RODEO is liable for

punitive damages. In the alternative, Plaintiffs request statutory penalties for each willful violation of Cal. Civ. Code § 798 et seq. by RODEO.

49. From July 20, 2015 to present, ACACIA and PACIFICA forced Plaintiffs to live in filth and degradation by ignoring these conditions. ACACIA and PACIFICA had the financial ability to abate and remedy the above problems, but out of greed deliberately chose to let Plaintiffs suffer rather than make any repairs. By forcing Plaintiffs to live in unhealthful and unsafe conditions, ACACIA and PACIFICA subjected them to cruel and unjust hardship in conscious disregard of Plaintiffs' rights. When Plaintiffs sought to assert their rights, ACACIA and PACIFICA retaliated by harassing Plaintiffs through various actions including threatening to evict them. ACACIA filed unlawful detainer actions against Plaintiffs in February 2018 seeking to evict them from the Park. By ignoring Park problems, ACACIA and PACIFICA consciously disregarded Plaintiffs' rights and safety. ACACIA and PACIFICA acted despicably by treating Plaintiffs as mere chattel. ACACIA and PACIFICA's conduct above was carried on with a willful and conscious disregard of Plaintiffs' rights and safety. ACACIA and PACIFICA's conduct warrants an award of punitive damages because its despicable conduct subjected Plaintiffs to cruel and unjust hardship in knowing disregard of Plaintiffs' rights and/or constitutes malice as defined in Civil Code section 3294. ACACIA and PACIFICA are liable for punitive damages because their officer, director, managing member, and sole owner, DEEPAK ISRANI, knew of the despicable conduct constituting malice or oppression and adopted or approved that conduct after it occurred; the conduct constituting malice or oppression was authorized by ACACIA and PACIFICA's managing agent DEEPAK ISRANI, or the conduct constituting malice or oppression was committed by DEEPAK ISRANI, as ACACIA and PACIFICA's managing agent. In the alternative, Plaintiffs request statutory penalties for each willful violation of Civil Code sections 798 et seq. by ACACIA and PACIFICA and its management.

50. ACACIA and PACIFICA are further liable for punitive damages pursuant to Cal. Civ. Code §§ 3294 because its officer, director, managing member, and sole owner, DEEPAK ISRANI was negligent in hiring Park agents and employees, including ROSALINDA BLACKMAN, and maintenance person(s) DOE DEFENDANT 2, none of whom were properly trained to address Park maintenance, problems, and health and safety hazards in the Park and as such were unfit for their

jobs. DEEPAK ISRANI failed to train and direct his employees to protect residents from harm by substantially failing to provide and maintain the Park in good working order and condition. The employees were not trained by DEEPAK ISRANI to detect unsafe or dangerous conditions, and Plaintiffs are informed and believe were instructed by DEEPAK ISRANI to avoid involvement in the Park residents' safety needs or even to inquire about potential safety concerns. ACACIA and PACIFICA's managing agent, DEEPAK ISRANI , who decides what maintenance and repairs are to be done at the Park, and is ultimately responsible to make the Park safe did not properly train and supervise ACACIA and PACIFICA's employees to provide safety and health awareness and protection to prevent low income tenants from being harmed. ACACIA and PACIFICA's managing agent DEEPAK ISRANI adopted and/or approved ACACIA and PACIFICA's employees' conduct after it occurred by accepting what they did without any reprimand or changing the manner and procedures by which its employees perform in similar situations such as the ones involving Plaintiffs. ACACIA and PACIFICA are guilty of malice in that their conduct was despicable conduct which was carried on with a willful and conscious disregard of the rights and safety of Plaintiffs. Also, ACACIA and PACIFICA are guilty of oppression because their conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing and/or conscious disregard of their rights and safety. ACACIA and PACIFICA's managing agent DEEPAK ISRANI adopted and approved the conduct alleged herein by not changing ACACIA and PACIFICA's methods and procedures even though Plaintiffs were injured as a result of its failure to act. Under Civil Code §3294, punitive damages can be assessed against ACACIA and PACIFICA in these circumstances because ACACIA and PACIFICA had advance knowledge of the unfitness of one or more of its employees, including ROSALINDA BLACKMAN and maintenance person(s) DOE 2, and employed them in conscious disregard of the rights and safety of Plaintiffs. Plaintiffs are informed and believe and thereon allege, to protect ACACIA and PACIFICA's monetary assets over the health and safety of Plaintiffs, ACACIA and PACIFICA engaged in despicable conduct in conscious disregard of Plaintiffs' rights to health and safety. ACACIA and PACIFICA engaged in conduct from which it knew or should have known it was highly probable harm to Plaintiffs would result. Pursuant to Cal. Civ. Code §§ 3294 and 798.86, ACACIA and PACIFICA  is liable for punitive damages.  In the alternative,

Plaintiffs request statutory penalties for each willful violation of Cal. Civ. Code § 798 et seq. by ACACIA and PACIFICA.

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT**
**BY ALL PLAINTIFFS AGAINST RODEO, PACIFICA & ACACIA**

51. Plaintiffs reallege and incorporate paragraphs 1 through 50.

52. Identities of Plaintiffs asserting a cause of action for breach of contract:

a. All Plaintiffs except MARIA ENCARNACION V. and JUAN GONZALEZ assert a cause of action for breach of contract against RODEO for the breaches that occurred during all relevant times of RODEO's period of Park ownership/operation (from January 19, 2010 to July 19, 2015).

b. All Plaintiffs including MARIA ENCARNACION V. and JUAN GONZALEZ a cause of action for breach of contract against ACACIA and PACIFICA for the breaches that occurred during all relevant times of their Park ownership/operation (from July 20, 2015 through the present).

53. Each Plaintiff is or has been a homeowner or resident who rent(ed) a space in the Park during the past five years under a written agreement based on an instrument in writing or agreement implied by law, the form of which varies from Plaintiff to Plaintiff, or are third party beneficiaries of those agreements. These agreements constitute rental and/or lease agreements with RODEO and Plaintiffs from January 19, 2010 to July 19, 2015 and between Plaintiffs, ACACIA, and PACIFICA from July 20, 2015 to the present. Plaintiffs' tenancies are governed by the terms of those agreements with Defendants which incorporate as a matter of law the provisions of the Mobilehome Residency Law, Cal. Civ. Code § 798 et seq. (hereinafter "MRL").

54. Although the form of the agreements for each Plaintiff varies, the essential common provisions are that Plaintiffs agreed to pay rent and in exchange, RODEO, ACACIA & PACIFICA promised to: (1) provide and maintain the Park's common areas, facilities, services and physical improvements in good working order and condition; (2) provide a lot subdivided for a mobilehome in safe, habitable condition; (3) enforce Park rules and regulations consistent with the requirements

of Cal. Civ. Code § 798.15; (4) deal with Plaintiffs in good faith; and, (5) preserve Plaintiffs' quiet enjoyment of their premises.

55.     Plaintiffs have performed their obligations under their rental and/or lease agreements.

56.     RODEO breached the agreements from January 19, 2010 to July 19, 2015 as set forth herein, and in paragraphs 35-37.

57.     ACACIA and PACIFICA breached the agreements from July 20, 2015 to the present as set forth herein, and in paragraphs 35-37.

58.     As a proximate result of the above breaches, Plaintiffs suffered the damages (other than mental suffering and emotional distress, bodily and personal injury, annoyance, discomfort) alleged in paragraph 39.

**THIRD CAUSE OF ACTION**
**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING (CONTRACT)**
**BY ALL PLAINTIFFS AGAINST RODEO, PACIFICA & ACACIA**

59.     Plaintiffs reallege and incorporate paragraphs 1 through 58.

60.     Identities of Plaintiffs asserting a cause of action for breach of the covenant of good faith and fair dealing:

a.     All Plaintiffs except MARIA ENCARNACION V. and JUAN GONZALEZ assert a cause of action for breach of the covenant of good faith and fair dealing against RODEO for the breaches that occurred during all relevant times of RODEO's period of Park ownership/operation (from January 19, 2010 to July 19, 2015).

b.     All Plaintiffs including MARIA ENCARNACION V. and JUAN GONZALEZ a cause of action for breach of the covenant of good faith and fair dealing against ACACIA and PACIFICA for the breaches that occurred during all relevant times of their Park ownership/operation (from July 20, 2015 through the present).

61.     Plaintiffs have a significant investment in their homes, including landscaping and other installation costs. Plaintiffs' homes are very costly to move and highly susceptible to damage if moved. The State Legislature has recognized these factors in Cal. Civ. Code § 798.55.

62.     There is an extreme shortage of mobilehome rental spaces in the Park's vicinity in which to move.

I:\0054.001\Pleadings 001\FTM\015 Third Amended Complaint.wpd          - 19 -

PLAINTIFFS' THIRD AMENDED COMPLAINT

63. The difficulty and expense of moving their homes, combined with the rental-space shortage, place Plaintiffs in an inherently unequal bargaining position, making them economic hostages of Defendants.

64. Because Plaintiffs do not have the option, like an apartment dweller, of simply moving their homes if they do not like the way Defendants maintain the Park, Plaintiffs necessarily placed their trust in and were vulnerable to Defendants to perform their maintenance responsibilities. Defendants were aware of Plaintiffs' vulnerability and the trust placed in them.

65. There is an implied covenant of good faith and fair dealing in Plaintiffs' rental and/or lease agreements whereby Defendants promise to deal with Plaintiffs in good faith so as not to deprive them of the benefits of their agreements. Defendants have a duty to set rents in good faith and at reasonable levels.

66. RODEO breached this implied duty of good faith and fair dealing at all relevant times from January 19, 2010 to July 19, 2015 by failing to provide and maintain the Park's common areas and facilities in good working, decreasing amenities as set forth herein and by their actions alleged in paragraphs 35-37 and throughout this Third Amended Complaint, and by interfering with Plaintiffs' ability to sell their mobilehomes to the extent that Plaintiffs own their dwelling units. RODEO's actions breached the covenant of good faith and fair dealing and violated Plaintiffs' rental and/or lease agreements, Park rules and regulations, and the MRL, including Cal. Civ. Code §§ 798.23, 798.25, and 789.74.

67. ACACIA and PACIFICA breached this implied duty of good faith and fair dealing from July 20, 2015 to the present by failing to provide and maintain the Park's common areas and facilities in good working, decreasing amenities as set forth herein and by their actions alleged in paragraphs 35-37 and throughout this Third Amended Complaint, and by interfering with Plaintiffs' ability to sell their mobilehomes to the extent that Plaintiffs own their dwelling units. ACACIA and PACIFICA's actions breached the covenant of good faith and fair dealing and violated Plaintiffs' rental and/or lease agreements, Park rules and regulations, and the MRL, including Cal. Civ. Code §§ 798.23, 798.25, and 789.74.

///

68.    As a proximate result of RODEO, ACACIA and PACIFICA's breaches, Plaintiffs have suffered the damages (other than mental suffering and emotional distress, bodily and personal injury, annoyance, discomfort) alleged in paragraph 39.

## FOURTH CAUSE OF ACTION
### INTENTIONAL INTERFERENCE WITH PROPERTY RIGHTS
### BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

69.    Plaintiffs reallege paragraphs 1 through 68.

70.    Identities of Plaintiffs asserting a cause of action for intentional interference with property rights:

a.    All Plaintiffs except MARIA ENCARNACION V. and JUAN GONZALEZ assert a cause of action for intentional interference with property rights against RODEO and YOLANDA MARTINEZ for tortious conduct committed against Plaintiffs at all the relevant times of RODEO's period of Park ownership/operation (from January 19, 2010 to July 19, 2015).

b.    All Plaintiffs including MARIA ENCARNACION V. and JUAN GONZALEZ assert a cause of action for intentional interference with property rights against ACACIA and PACIFICA for tortious conduct committed against Plaintiffs during all relevant times of their Park ownership/operation (from July 20, 2015 through the present).

71.    The MRL grants Plaintiffs a right to place, and sell in place, their mobilehomes in the Park. Defendants cannot withhold approval of a buyer of a Plaintiff's home if the purchaser has the financial ability to pay the rent and charges of the Park unless Defendants can demonstrate that based on prior tenancies the buyer will not comply with the rules and regulations of the Park. If the approval of a purchaser is withheld for any other reason, Defendants are liable for all damages proximately resulting therefrom. Plaintiffs also have the right to obtain title to their homes upon purchase from Defendants.

72.    Plaintiffs also have the right to quiet enjoyment of their property, and consequently Defendants may not enter upon a Plaintiff's space without their prior written consent. Plaintiffs also have the right to be free from public nuisance and consequently Defendants must provide and maintain physical improvements in the common facilities in good working order and condition.

I:\0054.001\Pleadings 001\FTM\015 Third Amended Complaint.wpd                - 21 -

73. By interfering with the sales of Plaintiffs' homes from January 19, 2010 to July 19, 2015, RODEO and YOLANDA MARTINEZ violated Plaintiffs' rights under the MRL.

74. By interfering with the sales of Plaintiffs' homes from July 20, 2015 through the present, ACACIA and PACIFICA violated Plaintiffs' rights under the MRL.

75. By entering Plaintiffs' spaces without notice and for no legitimate reason from January 19, 2010 to July 19, 2015, RODEO and YOLANDA MARTINEZ violated Plaintiffs' rights under the MRL.

76. By entering Plaintiffs' spaces without notice and for no legitimate reason from July 20, 2015 through the present, ACACIA and PACIFICA violated Plaintiffs' rights under the MRL.

77. By failing to provide and maintain physical improvements in the common facilities in good working order and condition and by the conduct set out in paragraphs 35-37 from January 19, 2010 to July 19, 2015, RODEO and YOLANDA MARTINEZ violated Plaintiffs' property rights and/or rights under the MRL.

78. By failing to provide and maintain physical improvements in the common facilities in good working order and condition and by the conduct set out in paragraphs 35-37 from July 20, 2015 through the present, ACACIA and PACIFICA violated Plaintiffs' property rights and/or rights under the MRL.

79. As a proximate result of Defendants' conduct, Plaintiffs have suffered the damages alleged in paragraph 39.

80. RODEO and YOLANDA MARTINEZ were aware of Plaintiffs' right to sell their homes in place. RODEO and YOLANDA MARTINEZ's actions deliberately interfered with the sale of Plaintiffs' homes. Further, RODEO and YOLANDA MARTINEZ were aware of the notice required to enter Plaintiffs' spaces. RODEO employees, managers, and agents, including YOLANDA MARTINEZ, ELIZABETH RODRIGUEZ, and maintenance worker, PABLO BERNAL, entered Plaintiffs' spaces without notice and for no legitimate purpose. Further, RODEO and YOLANDA MARTINEZ were aware of the requirement to provide and maintain the physical improvements in the common facilities in good working order and condition. RODEO and YOLANDA MARTINEZ failed to provide and maintain the physical improvements in good working

order as set out herein from January 19, 2010 to July 19, 2015 and violated Plaintiffs' rights as set out in paragraphs 35-37. RODEO and YOLANDA MARTINEZ's conscious disregard of Plaintiffs' rights was despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of their rights. RODEO and YOLANDA MARTINEZ consciously inflicted economic and personal hardship upon Plaintiffs by interfering with sales, by entering Plaintiffs' spaces without notice and by failing to provide and maintain physical improvements in the common facilities in good working order and condition. RODEO and YOLANDA MARTINEZ's conduct warrants an award of punitive damages because it constitutes oppression and/or malice as defined in Cal. Civ. Code § 3294. RODEO and YOLANDA MARTINEZ had the financial ability to abate and remedy the above problems, but out of greed deliberately chose to let Plaintiffs suffer rather than make any repairs. By forcing Plaintiffs to live in unhealthful and unsafe conditions, RODEO and YOLANDA MARTINEZ subjected them to cruel and unjust hardship in conscious disregard of Plaintiffs' rights. When Plaintiffs sought to assert their rights, RODEO and YOLANDA MARTINEZ retaliated by harassing Plaintiffs through various actions including threatening to evict them. By ignoring Park problems, RODEO and YOLANDA MARTINEZ consciously disregarded Plaintiffs' rights and safety. RODEO and YOLANDA MARTINEZ acted despicably by treating Plaintiffs as mere chattel. RODEO and YOLANDA MARTINEZ's conduct above was carried on with a willful and conscious disregard of Plaintiffs' rights and safety. RODEO and YOLANDA MARTINEZ's conduct warrants an award of punitive damages because its despicable conduct subjected Plaintiffs to cruel and unjust hardship in knowing disregard of Plaintiffs' rights and/or constitutes malice as defined in Civil Code section 3294. RODEO is liable for punitive damages because its officer, director, managing member, and sole owner, JOSEPH SHOBANI, knew of the despicable conduct constituting malice or oppression and adopted or approved that conduct after it occurred; the conduct constituting malice or oppression was authorized by RODEO's managing agent JOSEPH SHABANI, or the conduct constituting malice or oppression was committed by JOSEPH SHABANI, as RODEO's officer, director, managing member, and sole owner.

///

///

81.    RODEO is further liable for punitive damages pursuant to Cal. Civ. Code §§ 3294 because its officer, director, managing member, and sole owner, JOSEPH SHABANI was negligent in hiring Park agents and employees, including YOLANDA MARTINEZ, ELIZABETH RODRIGUEZ, and maintenance person(s) DOE 1, none of whom were properly trained to address Park maintenance, problems, and health and safety hazards in the Park and as such were unfit for their jobs. JOSEPH SHABANI failed to train and direct his employees to protect residents from harm by substantially failing to provide and maintain the Park in good working order and condition. The employees were not trained by JOSEPH SHABANI to detect unsafe or dangerous conditions, and Plaintiffs are informed and believe were instructed by JOSEPH SHABANI to avoid involvement in the Park residents' safety needs or even to inquire about potential safety concerns. RODEO's managing agent, JOSEPH SHABANI, who decides what maintenance and repairs are to be done at the Park, and is ultimately responsible to make the Park safe did not properly train and supervise RODEO's employees to provide safety and health awareness and protection to prevent low income tenants from being harmed. RODEO's managing agent JOSEPH SHABANI adopted and/or approved RODEO's employees' conduct after it occurred by accepting what they did without any reprimand or changing the manner and procedures by which its employees perform in similar situations such as the ones involving Plaintiffs. RODEO is guilty of malice in that its conduct was despicable conduct which was carried on with a willful and conscious disregard of the rights and safety of Plaintiffs. Also, RODEO is guilty of oppression because its conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing and/or conscious disregard of their rights and safety. RODEO's managing agent JOSEPH SHABANI adopted and approved the conduct alleged herein by not changing RODEO's methods and procedures even though Plaintiffs were injured as a result of its failure to act. Under Civil Code §3294, punitive damages can be assessed against RODEO in these circumstances because RODEO had advance knowledge of the unfitness of one or more of its employees, including YOLANDA MARTINEZ, ELIZABETH RODRIGUEZ, and maintenance person(s) DOE 1, and employed them in conscious disregard of the rights and safety of Plaintiffs. Plaintiffs are informed and believe and thereon allege, to protect RODEO's monetary assets over the health and safety of Plaintiffs, RODEO engaged in despicable conduct in

conscious disregard of Plaintiffs' rights to health and safety. RODEO engaged in conduct from which it knew or should have known it was highly probable harm to Plaintiffs would result. Pursuant to Cal. Civ. Code §§ 3294 and 798.86, RODEO is liable for punitive damages. In the alternative, Plaintiffs request statutory penalties for each willful violation of Cal. Civ. Code § 798 et seq. by RODEO.

82.    ACACIA and PACIFICA were aware of Plaintiffs' right to sell their homes in place. ACACIA and PACIFICA's actions deliberately interfered with the sale of Plaintiffs' homes. Further, ACACIA and PACIFICA were aware of the notice required to enter Plaintiffs' spaces. ACACIA and PACIFICA's employees, managers, and agents, including ROSALINDA BLACKMUN, MARTIN "DOE" and CARLOS "DOE", entered Plaintiffs' spaces without notice and for no legitimate purpose. Further, ACACIA and PACIFICA were aware of the requirement to provide and maintain the physical improvements in the common facilities in good working order and condition. ACACIA and PACIFICA failed to provide and maintain the physical improvements in good working order as set out herein from July 20, 2015 to present and violated Plaintiffs' rights as set out in paragraphs 35-37. ACACIA and PACIFICA's conscious disregard of Plaintiffs' rights was despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of their rights. ACACIA and PACIFICA consciously inflicted economic and personal hardship upon Plaintiffs by interfering with sales, by entering Plaintiffs' spaces without notice and by failing to provide and maintain physical improvements in the common facilities in good working order and condition. ACACIA and PACIFICA's conduct warrants an award of punitive damages because it constitutes oppression and/or malice as defined in Cal. Civ. Code § 3294. ACACIA and PACIFICA had the financial ability to abate and remedy the above problems, but out of greed deliberately chose to let Plaintiffs suffer rather than make any repairs. By forcing Plaintiffs to live in unhealthful and unsafe conditions, ACACIA and PACIFICA subjected them to cruel and unjust hardship in conscious disregard of Plaintiffs' rights. When Plaintiffs sought to assert their rights, ACACIA and PACIFICA retaliated by harassing Plaintiffs through various actions including threatening to evict them. ACACIA filed unlawful detainer actions against Plaintiffs in February 2018 seeking to evict them from the Park. By ignoring Park problems, ACACIA and PACIFICA consciously disregarded Plaintiffs' rights and

safety. ACACIA and PACIFICA acted despicably by treating Plaintiffs as mere chattel. ACACIA and PACIFICA's conduct above was carried on with a willful and conscious disregard of Plaintiffs' rights and safety. ACACIA and PACIFICA's conduct warrants an award of punitive damages because its despicable conduct subjected Plaintiffs to cruel and unjust hardship in knowing disregard of Plaintiffs' rights and/or constitutes malice as defined in Civil Code section 3294. ACACIA and PACIFICA are liable for punitive damages because their officer, director, managing member, and sole owner, DEEPAK ISRANI, knew of the despicable conduct constituting malice or oppression and adopted or approved that conduct after it occurred; the conduct constituting malice or oppression was authorized by ACACIA and PACIFICA's managing agent DEEPAK ISRANI, or the conduct constituting malice or oppression was committed by DEEPAK ISRANI, as ACACIA and PACIFICA's officer, director, managing member, and sole owner.

83.    ACACIA and PACIFICA are further liable for punitive damages pursuant to Cal. Civ. Code §§ 3294 because its officer, director, managing member, and sole owner, DEEPAK ISRANI was negligent in hiring Park agents and employees, including ROSALINDA BLACKMAN, and maintenance person(s) DOE 2, none of whom were properly trained to address Park maintenance, problems, and health and safety hazards in the Park and as such were unfit for their jobs. DEEPAK ISRANI failed to train and direct his employees to protect residents from harm by substantially failing to provide and maintain the Park in good working order and condition. The employees were not trained by DEEPAK ISRANI to detect unsafe or dangerous conditions, and Plaintiffs are informed and believe were instructed by DEEPAK ISRANI to avoid involvement in the Park residents' safety needs or even to inquire about potential safety concerns. ACACIA and PACIFICA's managing agent, DEEPAK ISRANI , who decides what maintenance and repairs are to be done at the Park, and is ultimately responsible to make the Park safe did not properly train and supervise ACACIA and PACIFICA's employees to provide safety and health awareness and protection to prevent low income tenants from being harmed. ACACIA and PACIFICA's managing agent DEEPAK ISRANI adopted and/or approved ACACIA and PACIFICA's employees' conduct after it occurred by accepting what they did without any reprimand or changing the manner and procedures by which its employees perform in similar situations such as the ones involving

Plaintiffs. ACACIA and PACIFICA are guilty of malice in that their conduct was despicable conduct which was carried on with a willful and conscious disregard of the rights and safety of Plaintiffs. Also, ACACIA and PACIFICA are guilty of oppression because their conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing and/or conscious disregard of their rights and safety. ACACIA and PACIFICA's managing agent DEEPAK ISRANI adopted and approved the conduct alleged herein by not changing ACACIA and PACIFICA's methods and procedures even though Plaintiffs were injured as a result of its failure to act. Under Civil Code §3294, punitive damages can be assessed against ACACIA and PACIFICA in these circumstances because ACACIA and PACIFICA had advance knowledge of the unfitness of one or more of its employees, including ROSALINDA BLACKMAN and maintenance person(s) DOE 2, and employed them in conscious disregard of the rights and safety of Plaintiffs. Plaintiffs are informed and believe and thereon allege, to protect ACACIA and PACIFICA's monetary assets over the health and safety of Plaintiffs, ACACIA and PACIFICA engaged in despicable conduct in conscious disregard of Plaintiffs' rights to health and safety. ACACIA and PACIFICA engaged in conduct from which it knew or should have known it was highly probable harm to Plaintiffs would result. Pursuant to Cal. Civ. Code §§ 3294 and 798.86, ACACIA and PACIFICA is liable for punitive damages. In the alternative, Plaintiffs request statutory penalties for each willful violation of Cal. Civ. Code § 798 et seq. by ACACIA and PACIFICA.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE

### BY ALL PLAINTIFFS AGAINST RODEO, ACACIA & PACIFICA

84.    Plaintiffs reallege and incorporate paragraphs 1 through 83.

85.    Identities of Plaintiffs asserting a negligence cause of action:

a.    All Plaintiffs except MARIA ENCARNACION V. and JUAN GONZALEZ assert a cause of action for negligence against RODEO for acts and omissions committed against Plaintiffs during all relevant times of RODEO's period of Park ownership/operation (from January 19, 2010 to July 19, 2015).

///

b.    All Plaintiffs including MARIA ENCARNACION V. and JUAN GONZALEZ assert a cause of action for negligence against ACACIA and PACIFICA for acts and omissions committed against Plaintiffs during all relevant times of their Park ownership/operation (from July 20, 2015 through the present).

86.    At common law and under Cal. Civ. Code §§ 1708 and 1714, Defendants owe Plaintiffs a duty of care to manage, operate and/or maintain the Park during their respective periods of ownership/operation so as to not cause Plaintiffs injury.

87.    By the affirmative acts and/or failures to act as set forth herein and as alleged in paragraphs 35-37, Defendants have breached their duty of care to Plaintiffs during their respective periods of Park ownership/operation (RODEO from January 19, 2010 to July 19, 2015 and ACACIA AND PACIFICA July 20, 2015 through the present).

88.    As a proximate result of Defendants' breaches, Plaintiffs have suffered the damages alleged in paragraph 39.

89.    Plaintiffs notified Defendants of the foregoing conditions and made numerous complaints to Defendants, YOLANDA MARTINEZ, JOSEPH SHABANI, and DEEPAK ISRANI, the managers and employees of Defendants during their respective periods of Park ownership/operation, and local governmental agencies about Defendants' failure to provide and maintain the Park's common areas, facilities and physical improvements in good working order.

90.    Between January 19, 2010 and July 19, 2015, JOSEPH SHABANI as RODEO's officer, director, managing member, and sole owner was personally aware of the problems in the Park identified in ¶¶ 34-36 through notices provided by Plaintiffs and RODEO employees. He also presented to the Park every quarter from 2010 to 2015 to inspect the Park and view its conditions which further placed him on notice of the poor Park conditions.

91.    Based on the foregoing, JOSEPH SHABANI as RODEO's officer, director, managing member, and sole owner was personally aware of the following:

a.    the Park's sewer system is failing causing sewage to back-up in or spill around Plaintiffs' homes, lots and in common areas; the sewage spills expose Plaintiffs to serious health hazards and can cause personal and bodily injury; Plaintiffs have to live with the constant,

I:\0054.001\Pleadings 001\FTM\015 Third Amended Complaint.wpd    - 28 -

unbearable stench of sewage in the Park;

b.     the water is not potable, should not be used for drinking, and can cause illnesses in the Plaintiffs;

c.     the electric system is inadequate and presents the danger or risk of physical shock and mobilehomes catching fire;

d.     the Park has poor drainage causing land movement and subsidence resulting in unleveling, sinking and damage to some homes and spaces, and differential settlement of Plaintiffs' lots causing damage to Plaintiffs' homes, property and driveways;

e.     the lack of security and inadequate lighting endanger the safety of Plaintiffs and their families;

f.     The Additions JOSEPH SHABANI expressly authorized or later approved and ratified, violated applicable building codes and state regulations concerning mobile homes and that permits were necessary before constructing said Additions; and

g.     Park conditions create health and safety hazards for Plaintiffs and their families.

92.     During the April 25, 2015 meeting with Plaintiffs, RODEO by and though its officer, director, managing member, and sole owner, JOSEPH SHABANI, promised to rectify these known defects and repair or replace the Park's utility infrastructure. However, JOSEPH SHABANI as RODEO's officer, director, managing member, and sole owner, had the financial ability to repair these problems, but chose to ignore them and refused to fix or remedy these problems. Instead, he sold the Park to ACACIA f/k/a PACIFICA without making any repairs.

93.     Between July 20, 2015 and the present, DEEPAK ISRANI, as the officer, director, managing member, and sole owner of ACACIA and PACIFICA was personally aware of the problems in the Park identified in ¶¶ 34-36 through notices provided directly to him by Plaintiffs and ACACIA and PACIFICA's employees, including ROSALINDA BLACKMAN and an unidentified DOE 1 Defendant. Though a complete summary of the notices and complaints is exhaustive and overly burdensome to identify in this Third Amended Complaint, examples of the foregoing are as follows:

///

a.     In March 2016, ACACIA and PACIFICA obtained an unfavorable judgment against them in an unlawful detainer action filed against Plaintiff Monica Gonzalez Delacruz wherein Judge Pressman found the Park was uninhabitable and that rent going forward would be substantially reduced to $100/month.

b.     In November 2016, ACACIA and PACIFICA were cited by San Diego Code Enforcement for sewage related violations which notes that a number of other active cases regarding similar problems in the Park were pending at that time.

c.     From 2015 to the present, Plaintiffs reported severe electricity and sewage problems to Park manager, ROSALINDA BLACKMAN. Plaintiffs are informed and believe that she notified DEEPAK ISRANI of said complaints, and that DEEPAK ISRANI refused to make any repairs because of associated costs.

94.     Based on the foregoing, DEEPAK ISRANI, as the officer, director, managing member, and sole owner of ACACIA and PACIFICA was personally aware of the following:

a.     the Park's sewer system is failing causing sewage to back-up in or spill around Plaintiffs' homes, lots and in common areas; the sewage spills expose Plaintiffs to serious health hazards and can cause personal and bodily injury; Plaintiffs have to live with the constant, unbearable stench of sewage in the Park;

b.     the water is not potable, should not be used for drinking, and can cause illnesses in the Plaintiffs;

c.     the electric system is inadequate and presents the danger or risk of physical shock and mobilehomes catching fire;

d.     the Park has poor drainage causing land movement and subsidence resulting in unleveling, sinking and damage to some homes and spaces, and differential settlement of Plaintiffs' lots causing damage to Plaintiffs' homes, property and driveways;

e.     the lack of security and inadequate lighting endanger the safety of Plaintiffs and their families; and

f.     Park conditions create health and safety hazards for Plaintiffs and their families.

///

95. DEEPAK ISRANI, as the officer, director, managing member, and sole owner of ACACIA and PACIFICA, had the financial ability to repair these problems, but chose to ignore them and refused to fix or remedy these problems

96. From January 19, 2010 and July 19, 2015, RODEO forced Plaintiffs to live in filth and degradation by ignoring these conditions. RODEO had the financial ability to abate and remedy the above problems, but out of greed deliberately chose to let Plaintiffs suffer rather than make any repairs. By forcing Plaintiffs to live in unhealthful and unsafe conditions, RODEO subjected them to cruel and unjust hardship in conscious disregard of Plaintiffs' rights. When Plaintiffs sought to assert their rights, RODEO retaliated by harassing Plaintiffs through various actions including threatening to evict them. By ignoring Park problems, RODEO consciously disregarded Plaintiffs' rights and safety. RODEO acted despicably by treating Plaintiffs as mere chattel. RODEO's conduct above was carried on with a willful and conscious disregard of Plaintiffs' rights and safety. RODEO's conduct warrants an award of punitive damages because its despicable conduct subjected Plaintiffs to cruel and unjust hardship in knowing disregard of Plaintiffs' rights and/or constitutes malice as defined in Civil Code section 3294. RODEO is liable for punitive damages because its officer, director, managing member, and sole owner, JOSEPH SHABANI, knew of the despicable conduct constituting malice or oppression and adopted or approved that conduct after it occurred; the conduct constituting malice or oppression was authorized by RODEO's managing agent JOSEPH SHABANI, or the conduct constituting malice or oppression was committed by JOSEPH SHABANI, as RODEO's managing agent. In the alternative, Plaintiffs request statutory penalties for each willful violation of Civil Code sections 798 *et seq.* by RODEO and its management.

97. RODEO is further liable for punitive damages pursuant to Cal. Civ. Code §§ 3294 because its officer, director, managing member, and sole owner, JOSEPH SHABANI was negligent in hiring Park agents and employees, including YOLANDA MARTINEZ, ELIZABETH RODRIGUEZ, and maintenance person(s) DOE 1, none of whom were properly trained to address Park maintenance, problems, and health and safety hazards in the Park and as such were unfit for their jobs. JOSEPH SHABANI failed to train and direct his employees to protect residents from harm by substantially failing to provide and maintain the Park in good working order and condition.

The employees were not trained by JOSEPH SHABANI to detect unsafe or dangerous conditions, and Plaintiffs are informed and believe were instructed by JOSEPH SHABANI to avoid involvement in the Park residents' safety needs or even to inquire about potential safety concerns. RODEO's managing agent, JOSEPH SHABANI, who decides what maintenance and repairs are to be done at the Park, and is ultimately responsible to make the Park safe did not properly train and supervise RODEO's employees to provide safety and health awareness and protection to prevent low income tenants from being harmed. RODEO's managing agent JOSEPH SHABANI adopted and/or approved RODEO's employees' conduct after it occurred by accepting what they did without any reprimand or changing the manner and procedures by which its employees perform in similar situations such as the ones involving Plaintiffs. RODEO is guilty of malice in that its conduct was despicable conduct which was carried on with a willful and conscious disregard of the rights and safety of Plaintiffs. Also, RODEO is guilty of oppression because its conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing and/or conscious disregard of their rights and safety. RODEO's managing agent JOSEPH SHABANI adopted and approved the conduct alleged herein by not changing RODEO's methods and procedures even though Plaintiffs were injured as a result of its failure to act. Under Civil Code §3294, punitive damages can be assessed against RODEO in these circumstances because RODEO had advance knowledge of the unfitness of one or more of its employees, including YOLANDA MARTINEZ, ELIZABETH RODRIGUEZ, and maintenance person(s) DOE 1, and employed them in conscious disregard of the rights and safety of Plaintiffs. Plaintiffs are informed and believe and thereon allege, to protect RODEO's monetary assets over the health and safety of Plaintiffs, RODEO engaged in despicable conduct in conscious disregard of Plaintiffs' rights to health and safety. RODEO engaged in conduct from which it knew or should have known it was highly probable harm to Plaintiffs would result. Pursuant to Cal. Civ. Code §§ 3294 and 798.86, RODEO is liable for punitive damages. In the alternative, Plaintiffs request statutory penalties for each willful violation of Cal. Civ. Code § 798 et seq. by RODEO.

///

///

98.     From July 20, 2015 to present, ACACIA and PACIFICA forced Plaintiffs to live in filth and degradation by ignoring these conditions. ACACIA and PACIFICA had the financial ability to abate and remedy the above problems, but out of greed deliberately chose to let Plaintiffs suffer rather than make any repairs. By forcing Plaintiffs to live in unhealthful and unsafe conditions, ACACIA and PACIFICA subjected them to cruel and unjust hardship in conscious disregard of Plaintiffs' rights. When Plaintiffs sought to assert their rights, ACACIA and PACIFICA retaliated by harassing Plaintiffs through various actions including threatening to evict them. ACACIA filed unlawful detainer actions against Plaintiffs in February 2018 seeking to evict them from the Park. By ignoring Park problems, ACACIA and PACIFICA consciously disregarded Plaintiffs' rights and safety. ACACIA and PACIFICA acted despicably by treating Plaintiffs as mere chattel. ACACIA and PACIFICA's conduct above was carried on with a willful and conscious disregard of Plaintiffs' rights and safety. ACACIA and PACIFICA's conduct warrants an award of punitive damages because its despicable conduct subjected Plaintiffs to cruel and unjust hardship in knowing disregard of Plaintiffs' rights and/or constitutes malice as defined in Civil Code section 3294. ACACIA and PACIFICA are liable for punitive damages because their officer, director, managing member, and sole owner, DEEPAK ISRANI, knew of the despicable conduct constituting malice or oppression and adopted or approved that conduct after it occurred; the conduct constituting malice or oppression was authorized by ACACIA and PACIFICA's managing agent DEEPAK ISRANI, or the conduct constituting malice or oppression was committed by DEEPAK ISRANI, as ACACIA and PACIFICA's managing agent. In the alternative, Plaintiffs request statutory penalties for each willful violation of Civil Code sections 798 *et seq.* by ACACIA and PACIFICA and its management.

99.     ACACIA and PACIFICA are further liable for punitive damages pursuant to Cal. Civ. Code §§ 3294 because its officer, director, managing member, and sole owner, DEEPAK ISRANI was negligent in hiring Park agents and employees, including ROSALINDA BLACKMAN, and maintenance person(s) DOE 2, none of whom were properly trained to address Park maintenance, problems, and health and safety hazards in the Park and as such were unfit for their jobs. DEEPAK ISRANI failed to train and direct his employees to protect residents from harm by substantially failing to provide and maintain the Park in good working order and condition. The employees were

not trained by DEEPAK ISRANI to detect unsafe or dangerous conditions, and Plaintiffs are informed and believe were instructed by DEEPAK ISRANI to avoid involvement in the Park residents' safety needs or even to inquire about potential safety concerns. ACACIA and PACIFICA's managing agent, DEEPAK ISRANI, who decides what maintenance and repairs are to be done at the Park, and is ultimately responsible to make the Park safe did not properly train and supervise ACACIA and PACIFICA's employees to provide safety and health awareness and protection to prevent low income tenants from being harmed. ACACIA and PACIFICA's managing agent DEEPAK ISRANI adopted and/or approved ACACIA and PACIFICA's employees' conduct after it occurred by accepting what they did without any reprimand or changing the manner and procedures by which its employees perform in similar situations such as the ones involving Plaintiffs. ACACIA and PACIFICA are guilty of malice in that their conduct was despicable conduct which was carried on with a willful and conscious disregard of the rights and safety of Plaintiffs. Also, ACACIA and PACIFICA are guilty of oppression because their conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing and/or conscious disregard of their rights and safety. ACACIA and PACIFICA's managing agent DEEPAK ISRANI adopted and approved the conduct alleged herein by not changing ACACIA and PACIFICA's methods and procedures even though Plaintiffs were injured as a result of its failure to act. Under Civil Code §3294, punitive damages can be assessed against ACACIA and PACIFICA in these circumstances because ACACIA and PACIFICA had advance knowledge of the unfitness of one or more of its employees, including ROSALINDA BLACKMAN and maintenance person(s) DOE 2, and employed them in conscious disregard of the rights and safety of Plaintiffs. Plaintiffs are informed and believe and thereon allege, to protect ACACIA and PACIFICA's monetary assets over the health and safety of Plaintiffs, ACACIA and PACIFICA engaged in despicable conduct in conscious disregard of Plaintiffs' rights to health and safety. ACACIA and PACIFICA engaged in conduct from which it knew or should have known it was highly probable harm to Plaintiffs would result. Pursuant to Cal. Civ. Code §§ 3294 and 798.86, ACACIA and PACIFICA is liable for punitive damages. In the alternative, Plaintiffs request statutory penalties for each willful violation of Cal. Civ. Code § 798 et seq. by ACACIA and PACIFICA.

## SIXTH CAUSE OF ACTION

## BREACH OF STATUTES

## BY ALL PLAINTIFFS AGAINST RODEO, ACACIA & PACIFICA

100. Plaintiffs reallege and incorporate paragraphs 1 through 99.

101. Identities of Plaintiffs asserting a cause of action for breach of statutes:

a. All Plaintiffs except MARIA ENCARNACION V. and JUAN GONZALEZ assert a cause of action for breach of statutes against RODEO for acts and omissions committed against Plaintiffs during the relevant times of RODEO's period of Park ownership/operation (from January 19, 2010 to July 19, 2015).

b. All Plaintiffs including MARIA ENCARNACION V. and JUAN GONZALEZ assert a cause of action for breach of statutes against ACACIA and PACIFICA for acts and omissions committed against Plaintiffs during the relevant times of their Park ownership/operation (from July 20, 2015 through the present).

102. The MRL and the Mobile Home Parks Act (Health and Safety Code § 18200, *et seq.* and Title 25, Chapter 2, of the California Code of Regulations) prohibit certain actions by Defendants as Park owners/operators and impose certain duties as a matter of public policy on Defendants to protect Plaintiffs' health and safety. Both laws were enacted for the benefit of and to protect mobilehome owners' and Plaintiffs' rights. As such, as injured members of the public for whose benefit the laws were enacted, Plaintiffs have standing to sue under these statutes.

103. Cal. Civ. Code § 798.55 provides that Plaintiffs be provided with unique protection from actual or constructive eviction.

104. Cal. Civ. Code §§ 798.56 and 798.58 identify the only permissible reasons for termination of a Plaintiff's tenancy.

105. Cal. Civ. Code §§ 798.71(b) and 798.81(a) provide that Defendants cannot prohibit either the listing or selling of Plaintiffs' mobilehomes.

106. Cal. Civ. Code § 798.40 allows for the billing to Plaintiffs of only the Park's cost of the charges for each billing period, along with the opening and closing readings for each Plaintiff's meter.

107. Cal. Civ. Code § 798.23 requires Defendants to comply with all Park rules and regulations to the same extent as other Park Plaintiffs and guests.

108. Cal. Civ. Code § 798.25 allows Defendants to amend Park rules and regulations only if they comply with the requirements of the statute.

109. Cal. Civ. Code § 798.26 prohibits Defendants or their agents, except in the case of an emergency, from entering any Plaintiffs' mobilehomes, and prohibits their entry onto Plaintiffs' spaces unless Plaintiffs have not maintained their spaces in accordance with the rules and regulations, but never if entry would interfere with Plaintiffs' quiet enjoyment.

110. California Health and Safety Code § 18059 prohibits Defendants from failing to deliver to a purchaser of a mobilehome, a properly endorsed title or registration.

111. California Health and Safety Code § 18122.5 makes it unlawful for any person to fail to properly endorse, date and deliver the certificate of title to the purchaser of a mobilehome.

112. California Health and Safety Code § 18554 makes it unlawful for a mobilehome park operator to permit any waste water or material from any plumbing fixtures in a manufactured mobilehome to be deposited on the ground.

113. California Health and Safety Code § 18603 requires every mobilehome park with 50 or more units to have at least one person who shall be responsible for, and who shall reasonably respond in a timely manner to emergencies concerning the operation and maintenance of the park. That person shall have knowledge of emergency procedures relative to utility systems and common facilities under the ownership and control of the owner of the park and shall be familiar with the emergency preparedness plans for the park.

114. California Health and Safety Code § 18670 requires that the electrical wiring, fixtures, and equipment installed in mobilehome parks comply with the standards in Title 25 of the California Code of Regulations and State Building Standards Code.

115. Title 25 of the California Code of Regulations § 1102(a) requires that the owner, operator, or the designated agent for the park be responsible for the safe operation and maintenance of all common areas, park-owned electrical, gas, and plumbing equipment and their installations, and all park-owned permanent buildings or structures, within the park.

116. Title 25 of the California Code of Regulations § 1108 requires that artificial lighting be installed and maintained in mobilehome parks which provides adequate artificial lighting

117. Title 25 of the California Code of Regulations § 1146 requires that the voltage drop from the park service to any home not exceed 5%

118. Title 25 of the California Code of Regulations § 1170 requires all electrical switches, circuit breakers, receptacles, and control equipment located outside a building to be rain-tight.

119. Title 25 of the California Code of Regulations § 1188 requires that each mobilehome space have the electrical capacity to properly supply the mobilehome, and that electrical installations be maintained in safe operating condition.

120. Title 25 of the California Code of Regulations § 1260 requires each mobilehome lot drain inlet trap to be individually vented with a vent pipe

121. Title 25 of the California Code of Regulations § 1116 requires that the Park area be so graded that no surface water accumulates, that the ground be sloped to provide storm drainage run-off by means of surface or a subsurface drainage facility, that the area beneath mobilehomes be sloped to provide drainage and be graded so that water does not accumulate beneath the home

122. Title 25 of the California Code of Regulations § 1254 requires that the drain inlets on mobilehome lots be capped gas-tight when not in use.

123. Title 25 of the California Code of Regulations § 1120 prohibits waste, weeds or litter in any vacant lots or open space of the park and requires that the park area be kept clean and free from accumulation of refuse, garbage, rubbish or debris.

124. Title 25 of the California Code of Regulations § 1274 requires that the water service on each mobilehome lot deliver safe, pure and potable water.

125. Title 25 of the California Code of Regulations § 1276 requires each mobilehome park water distribution system to be designed and maintained so as to provide pressure of not less than fifteen pounds per square inch at each mobilehome lot at maximum operating conditions

126. RODEO violated the provisions of the MRL by their actions and conduct as alleged in this Third Amended Complaint during its period of Park ownership/operation from January 19, 2010 to July 19, 2015.

127.    ACACIA and PACIFICA violated the provisions of the MRL by their actions and conduct as alleged in this Third Amended Complaint during its period of Park ownership/operation from July 20, 2015 to present.

128.    RODEO breached Health and Safety Code § 18554 on numerous occasions by permitting raw sewage from the sewer system and common facilities in the Park to spill and seep to the surface of the Park during its period of Park ownership/operation from January 19, 2010 to July 19, 2015.

129.    ACACIA and PACIFICA breached Health and Safety Code § 18554 on numerous occasions by permitting raw sewage from the sewer system and common facilities in the Park to spill and seep to the surface of the Park during its period of Park ownership/operation from July 20, 2015 to present.

130.    RODEO breached Health and Safety Code § 18670 by failing to provide wiring and fixtures in the Park adequate to accommodate the normal demand for electricity in the Park during its period of Park ownership/operation from January 19, 2010 to July 19, 2015.

131.    ACACIA and PACIFICA breached Health and Safety Code § 18670 by failing to provide wiring and fixtures in the Park adequate to accommodate the normal demand for electricity in the Park during its period of Park ownership/operation from July 20, 2015 to present.

132.    RODEO breached Title 25 of the California Code of Regulations § 1102(a) by failing to provide safe operation and maintenance of all common areas, Park-owned electrical, gas, and plumbing equipment and their installations, and all Park-owned permanent buildings or structures within the Park during its period of Park ownership/operation from January 19, 2010 to July 19, 2015.

133.    ACACIA and PACIFICA breached Title 25 of the California Code of Regulations § 1102(a) by failing to provide safe operation and maintenance of all common areas, Park-owned electrical, gas, and plumbing equipment and their installations, and all Park-owned permanent buildings or structures within the Park during its period of Park ownership/operation from July 20, 2015 to present.

///

134. RODEO breached Title 25 of the California Code of Regulations § 1108 by failing to install and maintain adequate artificial lighting in the Park during its period of Park ownership/operation from January 19, 2010 to July 19, 2015.

135. ACACIA and PACIFICA breached Title 25 of the California Code of Regulations § 1108 by failing to install and maintain adequate artificial lighting in the Park during its period of Park ownership/operation from July 20, 2015 to present.

136. RODEO breached Title 25 of the California Code of Regulations § 1146 by allowing the voltage drop from the Park service to homes in the Park to exceed 5% during its period of Park ownership/operation from January 19, 2010 to July 19, 2015.

137. ACACIA and PACIFICA breached Title 25 of the California Code of Regulations § 1146 by allowing the voltage drop from the Park service to homes in the Park to exceed 5% during its period of Park ownership/operation from July 20, 2015 to present.

138. RODEO breached Title 25 of the California Code of Regulations § 1170 by failing to provide rain-tight outside electrical equipment during its period of Park ownership/operation from January 19, 2010 to July 19, 2015.

139. ACACIA and PACIFICA breached Title 25 of the California Code of Regulations § 1170 by failing to provide rain-tight outside electrical equipment during its period of Park ownership/operation from July 20, 2015 to present.

140. RODEO breached Title 25 of the California Code of Regulations § 1260 by failing to vent the drain inlet traps in the Park during its period of Park ownership/operation from January 19, 2010 to July 19, 2015.

141. ACACIA and PACIFICA breached Title 25 of the California Code of Regulations § 1260 by failing to vent the drain inlet traps in the Park during its period of Park ownership/operation from July 20, 2015 to present.

142. RODEO breached Title 25 of the California Code of Regulations § 1116 by failing to maintain the drainage in the Park with the result that water accumulates in Park areas and underneath mobilehomes, and by allowing accumulation of refuse, garbage, rubbish or debris during its period of Park ownership/operation from January 19, 2010 to July 19, 2015.

143.   ACACIA and PACIFICA breached Title 25 of the California Code of Regulations § 1116 by failing to maintain the drainage in the Park with the result that water accumulates in Park areas and underneath mobilehomes, and by allowing accumulation of refuse, garbage, rubbish or debris during its period of Park ownership/operation from July 20, 2015 to present.

144.   RODEO breached Title 25 of the California Code of Regulations § 1274 in that the Park water system delivers odorous and bad water during its period of Park ownership/operation from January 19, 2010 to July 19, 2015.

145.   ACACIA and PACIFICA breached Title 25 of the California Code of Regulations § 1274 in that the Park water system delivers odorous and bad water during its period of Park ownership/operation from July 20, 2015 to present.

146.   RODEO breached Title 25 of the California Code of Regulations § 1276 by failing to maintain the water distribution system in the Park so it provides a minimum water pressure of fifteen pounds per square inch at each mobilehome lot at maximum operating conditions during its period of Park ownership/operation from January 19, 2010 to July 19, 2015.

147.   ACACIA and PACIFICA breached Title 25 of the California Code of Regulations § 1276 by failing to maintain the water distribution system in the Park so it provides a minimum water pressure of fifteen pounds per square inch at each mobilehome lot at maximum operating conditions during its period of Park ownership/operation from July 20, 2015 to present.

148.   The above statutes and codes were intended to protect Plaintiffs from the very harms alleged herein. They are and were in effect at all relevant times herein.

149.   As a proximate result of Defendants' breaches of the above statutes during their respective periods of Park ownership/operation, Plaintiffs suffered the damages alleged in paragraph 39.

150.   Plaintiffs notified Defendants of the foregoing conditions and made numerous complaints to Defendants, YOLANDA MARTINEZ, JOSEPH SHABANI, and DEEPAK ISRANI, the managers and employees of Defendants during their respective periods of Park ownership/operation, and local governmental agencies about Defendants' failure to provide and maintain the Park's common areas, facilities and physical improvements in good working order.

151.    Between January 19, 2010 and July 19, 2015, JOSEPH SHABANI as RODEO's officer, director, managing member, and sole owner was personally aware of the problems in the Park identified in ¶¶ 34-36 through notices provided by Plaintiffs and RODEO employees. He also presented to the Park every quarter from 2010 to 2015 to inspect the Park and view its conditions which further placed him on notice of the poor Park conditions.

152.    Based on the foregoing, JOSEPH SHABANI as RODEO's officer, director, managing member, and sole owner was personally aware of the following:

a.    the Park's sewer system is failing causing sewage to back-up in or spill around Plaintiffs' homes, lots and in common areas; the sewage spills expose Plaintiffs to serious health hazards and can cause personal and bodily injury; Plaintiffs have to live with the constant, unbearable stench of sewage in the Park;

b.    the water is not potable, should not be used for drinking, and can cause illnesses in the Plaintiffs;

c.    the electric system is inadequate and presents the danger or risk of physical shock and mobilehomes catching fire;

d.    the Park has poor drainage causing land movement and subsidence resulting in unleveling, sinking and damage to some homes and spaces, and differential settlement of Plaintiffs' lots causing damage to Plaintiffs' homes, property and driveways;

e.    the lack of security and inadequate lighting endanger the safety of Plaintiffs and their families;

f.    The Additions JOSEPH SHABANI expressly authorized or later approved and ratified, violated applicable building codes and state regulations concerning mobile homes and that permits were necessary before constructing said Additions; and

g.    Park conditions create health and safety hazards for Plaintiffs and their families.

153.    During the April 25, 2015 meeting with Plaintiffs, RODEO by and though its officer, director, managing member, and sole owner, JOSEPH SHABANI, promised to rectify these known defects and repair or replace the Park's utility infrastructure. However, JOSEPH SHABANI as RODEO's officer, director, managing member, and sole owner, had the financial ability to repair

these problems, but chose to ignore them and refused to fix or remedy these problems. Instead, he sold the Park to ACACIA f/k/a PACIFICA without making any repairs.

154.    Between July 20, 2015 and the present, DEEPAK ISRANI, as the officer, director, managing member, and sole owner of ACACIA and PACIFICA was personally aware of the problems in the Park identified in ¶¶ 34-36 through notices provided directly to him by Plaintiffs and ACACIA and PACIFICA's employees, including ROSALINDA BLACKMAN and an unidentified DOE 1 Defendant. Though a complete summary of the notices and complaints is exhaustive and overly burdensome to identify in this Third Amended Complaint, examples of the foregoing are as follows:

a.    In March 2016, ACACIA and PACIFICA obtained an unfavorable judgment against them in an unlawful detainer action filed against Plaintiff Monica Gonzalez Delacruz wherein Judge Pressman found the Park was uninhabitable and that rent going forward would be substantially reduced to $100/month.

b.    In November 2016, ACACIA and PACIFICA were cited by San Diego Code Enforcement for sewage related violations which notes that a number of other active cases regarding similar problems in the Park were pending at that time.

c.    From 2015 to the present, Plaintiffs reported severe electricity and sewage problems to Park manager, ROSALINDA BLACKMAN. Plaintiffs are informed and believe that she notified DEEPAK ISRANI of said complaints, and that DEEPAK ISRANI refused to make any repairs because of associated costs.

155.    Based on the foregoing, DEEPAK ISRANI, as the officer, director, managing member, and sole owner of ACACIA and PACIFICA was personally aware of the following:

a.    the Park's sewer system is failing causing sewage to back-up in or spill around Plaintiffs' homes, lots and in common areas; the sewage spills expose Plaintiffs to serious health hazards and can cause personal and bodily injury; Plaintiffs have to live with the constant, unbearable stench of sewage in the Park;

b.    the water is not potable, should not be used for drinking, and can cause illnesses in the Plaintiffs;

c.    the electric system is inadequate and presents the danger or risk of physical shock and mobilehomes catching fire;

d.    the Park has poor drainage causing land movement and subsidence resulting in unleveling, sinking and damage to some homes and spaces, and differential settlement of Plaintiffs' lots causing damage to Plaintiffs' homes, property and driveways;

e.    the lack of security and inadequate lighting endanger the safety of Plaintiffs and their families; and

f.    Park conditions create health and safety hazards for Plaintiffs and their families.

156.    DEEPAK ISRANI, as the officer, director, managing member, and sole owner of ACACIA and PACIFICA, had the financial ability to repair these problems, but chose to ignore them and refused to fix or remedy these problems

157.    From January 19, 2010 and July 19, 2015, RODEO forced Plaintiffs to live in filth and degradation by ignoring these conditions. RODEO had the financial ability to abate and remedy the above problems, but out of greed deliberately chose to let Plaintiffs suffer rather than make any repairs. By forcing Plaintiffs to live in unhealthful and unsafe conditions, RODEO subjected them to cruel and unjust hardship in conscious disregard of Plaintiffs' rights. When Plaintiffs sought to assert their rights, RODEO retaliated by harassing Plaintiffs through various actions including threatening to evict them. By ignoring Park problems, RODEO consciously disregarded Plaintiffs' rights and safety. RODEO acted despicably by treating Plaintiffs as mere chattel. RODEO's conduct above was carried on with a willful and conscious disregard of Plaintiffs' rights and safety. RODEO's conduct warrants an award of punitive damages because its despicable conduct subjected Plaintiffs to cruel and unjust hardship in knowing disregard of Plaintiffs' rights and/or constitutes malice as defined in Civil Code section 3294. RODEO is liable for punitive damages because its officer, director, managing member, and sole owner, JOSEPH SHABANI, knew of the despicable conduct constituting malice or oppression and adopted or approved that conduct after it occurred; the conduct constituting malice or oppression was authorized by RODEO's managing agent JOSEPH SHABANI, or the conduct constituting malice or oppression was committed by JOSEPH SHABANI, as RODEO's managing agent. In the alternative, Plaintiffs request statutory penalties for each willful

I:\0054.001\Pleadings 001\FTM\015 Third Amended Complaint.wpd        - 43 -

violation of Civil Code sections 798 *et seq.* by RODEO and its management.

158.    RODEO is further liable for punitive damages pursuant to Cal. Civ. Code §§ 3294 because its officer, director, managing member, and sole owner, JOSEPH SHABANI was negligent in hiring Park agents and employees, including YOLANDA MARTINEZ, ELIZABETH RODRIGUEZ, and maintenance person(s) DOE 1, none of whom were properly trained to address Park maintenance, problems, and health and safety hazards in the Park and as such were unfit for their jobs. JOSEPH SHABANI failed to train and direct his employees to protect residents from harm by substantially failing to provide and maintain the Park in good working order and condition. The employees were not trained by JOSEPH SHABANI to detect unsafe or dangerous conditions, and Plaintiffs are informed and believe were instructed by JOSEPH SHABANI to avoid involvement in the Park residents' safety needs or even to inquire about potential safety concerns. RODEO's managing agent, JOSEPH SHABANI, who decides what maintenance and repairs are to be done at the Park, and is ultimately responsible to make the Park safe did not properly train and supervise RODEO's employees to provide safety and health awareness and protection to prevent low income tenants from being harmed. RODEO's managing agent JOSEPH SHABANI adopted and/or approved RODEO's employees' conduct after it occurred by accepting what they did without any reprimand or changing the manner and procedures by which its employees perform in similar situations such as the ones involving Plaintiffs. RODEO is guilty of malice in that its conduct was despicable conduct which was carried on with a willful and conscious disregard of the rights and safety of Plaintiffs. Also, RODEO is guilty of oppression because its conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing and/or conscious disregard of their rights and safety. RODEO's managing agent JOSEPH SHABANI adopted and approved the conduct alleged herein by not changing RODEO's methods and procedures even though Plaintiffs were injured as a result of its failure to act. Under Civil Code §3294, punitive damages can be assessed against RODEO in these circumstances because RODEO had advance knowledge of the unfitness of one or more of its employees, including YOLANDA MARTINEZ, ELIZABETH RODRIGUEZ, and maintenance person(s) DOE 1, and employed them in conscious disregard of the rights and safety of Plaintiffs. Plaintiffs are informed and believe and thereon allege, to protect RODEO's

I:\0054.001\Pleadings 001\FTM\015 Third Amended Complaint.wpd

- 44 -

monetary assets over the health and safety of Plaintiffs, RODEO engaged in despicable conduct in conscious disregard of Plaintiffs' rights to health and safety. RODEO engaged in conduct from which it knew or should have known it was highly probable harm to Plaintiffs would result. Pursuant to Cal. Civ. Code §§ 3294 and 798.86, RODEO is liable for punitive damages. In the alternative, Plaintiffs request statutory penalties for each willful violation of Cal. Civ. Code § 798 et seq. by RODEO.

159.    From July 20, 2015 to present, ACACIA and PACIFICA forced Plaintiffs to live in filth and degradation by ignoring these conditions. ACACIA and PACIFICA had the financial ability to abate and remedy the above problems, but out of greed deliberately chose to let Plaintiffs suffer rather than make any repairs. By forcing Plaintiffs to live in unhealthful and unsafe conditions, ACACIA and PACIFICA subjected them to cruel and unjust hardship in conscious disregard of Plaintiffs' rights. When Plaintiffs sought to assert their rights, ACACIA and PACIFICA retaliated by harassing Plaintiffs through various actions including threatening to evict them. ACACIA filed unlawful detainer actions against Plaintiffs in February 2018 seeking to evict them from the Park. By ignoring Park problems, ACACIA and PACIFICA consciously disregarded Plaintiffs' rights and safety. ACACIA and PACIFICA acted despicably by treating Plaintiffs as mere chattel. ACACIA and PACIFICA's conduct above was carried on with a willful and conscious disregard of Plaintiffs' rights and safety. ACACIA and PACIFICA's conduct warrants an award of punitive damages because its despicable conduct subjected Plaintiffs to cruel and unjust hardship in knowing disregard of Plaintiffs' rights and/or constitutes malice as defined in Civil Code section 3294. ACACIA and PACIFICA are liable for punitive damages because their officer, director, managing member, and sole owner, DEEPAK ISRANI, knew of the despicable conduct constituting malice or oppression and adopted or approved that conduct after it occurred; the conduct constituting malice or oppression was authorized by ACACIA and PACIFICA's managing agent DEEPAK ISRANI, or the conduct constituting malice or oppression was committed by DEEPAK ISRANI, as ACACIA and PACIFICA's managing agent. In the alternative, Plaintiffs request statutory penalties for each willful violation of Civil Code sections 798 et seq. by ACACIA and PACIFICA and its management.

///

160. ACACIA and PACIFICA are further liable for punitive damages pursuant to Cal. Civ. Code §§ 3294 because its officer, director, managing member, and sole owner, DEEPAK ISRANI was negligent in hiring Park agents and employees, including ROSALINDA BLACKMAN, and maintenance person(s) DOE 2, none of whom were properly trained to address Park maintenance, problems, and health and safety hazards in the Park and as such were unfit for their jobs. DEEPAK ISRANI failed to train and direct his employees to protect residents from harm by substantially failing to provide and maintain the Park in good working order and condition. The employees were not trained by DEEPAK ISRANI to detect unsafe or dangerous conditions, and Plaintiffs are informed and believe were instructed by DEEPAK ISRANI to avoid involvement in the Park residents' safety needs or even to inquire about potential safety concerns. ACACIA and PACIFICA's managing agent, DEEPAK ISRANI , who decides what maintenance and repairs are to be done at the Park, and is ultimately responsible to make the Park safe did not properly train and supervise ACACIA and PACIFICA's employees to provide safety and health awareness and protection to prevent low income tenants from being harmed. ACACIA and PACIFICA's managing agent DEEPAK ISRANI adopted and/or approved ACACIA and PACIFICA's employees' conduct after it occurred by accepting what they did without any reprimand or changing the manner and procedures by which its employees perform in similar situations such as the ones involving Plaintiffs. ACACIA and PACIFICA are guilty of malice in that their conduct was despicable conduct which was carried on with a willful and conscious disregard of the rights and safety of Plaintiffs. Also, ACACIA and PACIFICA are guilty of oppression because their conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing and/or conscious disregard of their rights and safety. ACACIA and PACIFICA's managing agent DEEPAK ISRANI adopted and approved the conduct alleged herein by not changing ACACIA and PACIFICA's methods and procedures even though Plaintiffs were injured as a result of its failure to act. Under Civil Code §3294, punitive damages can be assessed against ACACIA and PACIFICA in these circumstances because ACACIA and PACIFICA had advance knowledge of the unfitness of one or more of its employees, including ROSALINDA BLACKMAN and maintenance person(s) DOE 2, and employed them in conscious disregard of the rights and safety of Plaintiffs. Plaintiffs are informed and believe and thereon allege,

to protect ACACIA and PACIFICA's monetary assets over the health and safety of Plaintiffs, ACACIA and PACIFICA engaged in despicable conduct in conscious disregard of Plaintiffs' rights to health and safety. ACACIA and PACIFICA engaged in conduct from which it knew or should have known it was highly probable harm to Plaintiffs would result. Pursuant to Cal. Civ. Code §§ 3294 and 798.86, ACACIA and PACIFICA is liable for punitive damages. In the alternative, Plaintiffs request statutory penalties for each willful violation of Cal. Civ. Code § 798 et seq. by ACACIA and PACIFICA..

## SEVENTH CAUSE OF ACTION

## BREACH OF WARRANTY OF HABITABILITY

## BY ALL PLAINTIFFS AGAINST RODEO, ACACIA & PACIFICA

161. Plaintiffs reallege and incorporate paragraphs 1 through 160.

162. Identities of Plaintiffs asserting a breach of warranty of habitability cause of action:

a. All Plaintiffs except MARIA ENCARNACION V. and JUAN GONZALEZ assert a cause of action for breach of warranty of habitability against RODEO and YOLANDA MARTINEZ for their acts and omissions committed against Plaintiffs during the relevant times of RODEO's period of Park ownership/operation (from January 19, 2010 to July 19, 2015).

b. All Plaintiffs including MARIA ENCARNACION V. and JUAN GONZALEZ assert a cause of action for breach of warranty of habitability against ACACIA and PACIFICA for their acts and omissions committed against Plaintiffs during the relevant times of their Park ownership/operation (from July 20, 2015 through the present).

163. Implicit in Plaintiffs' tenancy and rental/lease agreements with Defendants is the warranty of habitability wherein Defendants promised to inspect and to maintain the Park in a clean, safe, and habitable condition. California law recognizes that the implied warranty of habitability covers defects in common areas of a leased site as well as in a tenant's individual premises.

164. Defendants have breached the warranty of habitability during their respective period of Park ownership/operation (RODEO from January 19, 2010 to July 19, 2015 and ACACIA and PACIFICA from July 20, 2015 through the present) by failing to inspect and maintain the Park's sewer, water, gas, and electrical utilities and other common areas and facilities in a clean, safe, and

habitable condition, as alleged herein and in paragraphs 35-37. These failures to inspect and maintain have violated each Plaintiff's reasonable expectation that the premises he/she is renting are fit for habitation for the duration of the term of tenancy. As a proximate result of Defendants' breach, Plaintiffs suffered the damages alleged in paragraph 39.

165.    Plaintiffs notified Defendants of the foregoing conditions and made numerous complaints to Defendants, YOLANDA MARTINEZ, JOSEPH SHABANI, and DEEPAK ISRANI, the managers and employees of Defendants during their respective periods of Park ownership/operation, and local governmental agencies about Defendants' failure to provide and maintain the Park's common areas, facilities and physical improvements in good working order.

166.    Between January 19, 2010 and July 19, 2015, JOSEPH SHABANI as RODEO's officer, director, managing member, and sole owner was personally aware of the problems in the Park identified in ¶¶ 34-36 through notices provided by Plaintiffs and RODEO employees. He also presented to the Park every quarter from 2010 to 2015 to inspect the Park and view its conditions which further placed him on notice of the poor Park conditions.

167.    Based on the foregoing, JOSEPH SHABANI as RODEO's officer, director, managing member, and sole owner was personally aware of the following:

a.    the Park's sewer system is failing causing sewage to back-up in or spill around Plaintiffs' homes, lots and in common areas; the sewage spills expose Plaintiffs to serious health hazards and can cause personal and bodily injury; Plaintiffs have to live with the constant, unbearable stench of sewage in the Park;

b.    the water is not potable, should not be used for drinking, and can cause illnesses in the Plaintiffs;

c.    the electric system is inadequate and presents the danger or risk of physical shock and mobilehomes catching fire;

d.    the Park has poor drainage causing land movement and subsidence resulting in unleveling, sinking and damage to some homes and spaces, and differential settlement of Plaintiffs' lots causing damage to Plaintiffs' homes, property and driveways;

///

e.    the lack of security and inadequate lighting endanger the safety of Plaintiffs and their families;

f.    The Additions JOSEPH SHABANI expressly authorized or later approved and ratified, violated applicable building codes and state regulations concerning mobile homes and that permits were necessary before constructing said Additions; and

g.    Park conditions create health and safety hazards for Plaintiffs and their families.

168.    During the April 25, 2015 meeting with Plaintiffs, RODEO by and though its officer, director, managing member, and sole owner, JOSEPH SHABANI, promised to rectify these known defects and repair or replace the Park's utility infrastructure. However, JOSEPH SHABANI as RODEO's officer, director, managing member, and sole owner, had the financial ability to repair these problems, but chose to ignore them and refused to fix or remedy these problems. Instead, he sold the Park to ACACIA f/k/a PACIFICA without making any repairs.

169.    Between July 20, 2015 and the present, DEEPAK ISRANI, as the officer, director, managing member, and sole owner of ACACIA and PACIFICA was personally aware of the problems in the Park identified in ¶¶ 34-36 through notices provided directly to him by Plaintiffs and ACACIA and PACIFICA's employees, including ROSALINDA BLACKMAN and an unidentified DOE 1 Defendant. Though a complete summary of the notices and complaints is exhaustive and overly burdensome to identify in this Third Amended Complaint, examples of the foregoing are as follows:

a.    In March 2016, ACACIA and PACIFICA obtained an unfavorable judgment against them in an unlawful detainer action filed against Plaintiff Monica Gonzalez Delacruz wherein Judge Pressman found the Park was uninhabitable and that rent going forward would be substantially reduced to $100/month.

b.    In November 2016, ACACIA and PACIFICA were cited by San Diego Code Enforcement for sewage related violations which notes that a number of other active cases regarding similar problems in the Park were pending at that time.

c.    From 2015 to the present, Plaintiffs reported severe electricity and sewage problems to Park manager, ROSALINDA BLACKMAN. Plaintiffs are informed and believe that she notified

DEEPAK ISRANI of said complaints, and that DEEPAK ISRANI refused to make any repairs because of associated costs.

170.   Based on the foregoing, DEEPAK ISRANI, as the officer, director, managing member, and sole owner of ACACIA and PACIFICA was personally aware of the following:

   a.   the Park's sewer system is failing causing sewage to back-up in or spill around Plaintiffs' homes, lots and in common areas; the sewage spills expose Plaintiffs to serious health hazards and can cause personal and bodily injury; Plaintiffs have to live with the constant, unbearable stench of sewage in the Park;

   b.   the water is not potable, should not be used for drinking, and can cause illnesses in the Plaintiffs;

   c.   the electric system is inadequate and presents the danger or risk of physical shock and mobilehomes catching fire;

   d.   the Park has poor drainage causing land movement and subsidence resulting in unleveling, sinking and damage to some homes and spaces, and differential settlement of Plaintiffs' lots causing damage to Plaintiffs' homes, property and driveways;

   e.   the lack of security and inadequate lighting endanger the safety of Plaintiffs and their families; and

   f.   Park conditions create health and safety hazards for Plaintiffs and their families.

171.   DEEPAK ISRANI, as the officer, director, managing member, and sole owner of ACACIA and PACIFICA, had the financial ability to repair these problems, but chose to ignore them and refused to fix or remedy these problems

172.   From January 19, 2010 and July 19, 2015, RODEO forced Plaintiffs to live in filth and degradation by ignoring these conditions. RODEO had the financial ability to abate and remedy the above problems, but out of greed deliberately chose to let Plaintiffs suffer rather than make any repairs. By forcing Plaintiffs to live in unhealthful and unsafe conditions, RODEO subjected them to cruel and unjust hardship in conscious disregard of Plaintiffs' rights. When Plaintiffs sought to assert their rights, RODEO retaliated by harassing Plaintiffs through various actions including threatening to evict them. By ignoring Park problems, RODEO consciously disregarded Plaintiffs'

rights and safety. RODEO acted despicably by treating Plaintiffs as mere chattel. RODEO's conduct above was carried on with a willful and conscious disregard of Plaintiffs' rights and safety. RODEO's conduct warrants an award of punitive damages because its despicable conduct subjected Plaintiffs to cruel and unjust hardship in knowing disregard of Plaintiffs' rights and/or constitutes malice as defined in Civil Code section 3294. RODEO is liable for punitive damages because its officer, director, managing member, and sole owner, JOSEPH SHABANI, knew of the despicable conduct constituting malice or oppression and adopted or approved that conduct after it occurred; the conduct constituting malice or oppression was authorized by RODEO's managing agent JOSEPH SHABANI, or the conduct constituting malice or oppression was committed by JOSEPH SHABANI, as RODEO's managing agent. In the alternative, Plaintiffs request statutory penalties for each willful violation of Civil Code sections 798 *et seq.* by RODEO and its management.

173.    RODEO is further liable for punitive damages pursuant to Cal. Civ. Code §§ 3294 because its officer, director, managing member, and sole owner, JOSEPH SHABANI was negligent in hiring Park agents and employees, including YOLANDA MARTINEZ, ELIZABETH RODRIGUEZ, and maintenance person(s) DOE 1, none of whom were properly trained to address Park maintenance, problems, and health and safety hazards in the Park and as such were unfit for their jobs. JOSEPH SHABANI failed to train and direct his employees to protect residents from harm by substantially failing to provide and maintain the Park in good working order and condition. The employees were not trained by JOSEPH SHABANI to detect unsafe or dangerous conditions, and Plaintiffs are informed and believe were instructed by JOSEPH SHABANI to avoid involvement in the Park residents' safety needs or even to inquire about potential safety concerns. RODEO's managing agent, JOSEPH SHABANI, who decides what maintenance and repairs are to be done at the Park, and is ultimately responsible to make the Park safe did not properly train and supervise RODEO's employees to provide safety and health awareness and protection to prevent low income tenants from being harmed. RODEO's managing agent JOSEPH SHABANI adopted and/or approved RODEO's employees' conduct after it occurred by accepting what they did without any reprimand or changing the manner and procedures by which its employees perform in similar situations such as the ones involving Plaintiffs. RODEO is guilty of malice in that its conduct was

despicable conduct which was carried on with a willful and conscious disregard of the rights and safety of Plaintiffs. Also, RODEO is guilty of oppression because its conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing and/or conscious disregard of their rights and safety. RODEO's managing agent JOSEPH SHABANI adopted and approved the conduct alleged herein by not changing RODEO's methods and procedures even though Plaintiffs were injured as a result of its failure to act. Under Civil Code §3294, punitive damages can be assessed against RODEO in these circumstances because RODEO had advance knowledge of the unfitness of one or more of its employees, including YOLANDA MARTINEZ, ELIZABETH RODRIGUEZ, and maintenance person(s) DOE 1, and employed them in conscious disregard of the rights and safety of Plaintiffs. Plaintiffs are informed and believe and thereon allege, to protect RODEO's monetary assets over the health and safety of Plaintiffs, RODEO engaged in despicable conduct in conscious disregard of Plaintiffs' rights to health and safety. RODEO engaged in conduct from which it knew or should have known it was highly probable harm to Plaintiffs would result. Pursuant to Cal. Civ. Code §§ 3294 and 798.86, RODEO is liable for punitive damages. In the alternative, Plaintiffs request statutory penalties for each willful violation of Cal. Civ. Code § 798 et seq. by RODEO.

174. From July 20, 2015 to present, ACACIA and PACIFICA forced Plaintiffs to live in filth and degradation by ignoring these conditions. ACACIA and PACIFICA had the financial ability to abate and remedy the above problems, but out of greed deliberately chose to let Plaintiffs suffer rather than make any repairs. By forcing Plaintiffs to live in unhealthful and unsafe conditions, ACACIA and PACIFICA subjected them to cruel and unjust hardship in conscious disregard of Plaintiffs' rights. When Plaintiffs sought to assert their rights, ACACIA and PACIFICA retaliated by harassing Plaintiffs through various actions including threatening to evict them. ACACIA filed unlawful detainer actions against Plaintiffs in February 2018 seeking to evict them from the Park. By ignoring Park problems, ACACIA and PACIFICA consciously disregarded Plaintiffs' rights and safety. ACACIA and PACIFICA acted despicably by treating Plaintiffs as mere chattel. ACACIA and PACIFICA's conduct above was carried on with a willful and conscious disregard of Plaintiffs' rights and safety. ACACIA and PACIFICA's conduct warrants an award of punitive damages

because its despicable conduct subjected Plaintiffs to cruel and unjust hardship in knowing disregard of Plaintiffs' rights and/or constitutes malice as defined in Civil Code section 3294. ACACIA and PACIFICA are liable for punitive damages because their officer, director, managing member, and sole owner, DEEPAK ISRANI, knew of the despicable conduct constituting malice or oppression and adopted or approved that conduct after it occurred; the conduct constituting malice or oppression was authorized by ACACIA and PACIFICA's managing agent DEEPAK ISRANI, or the conduct constituting malice or oppression was committed by DEEPAK ISRANI, as ACACIA and PACIFICA's managing agent. In the alternative, Plaintiffs request statutory penalties for each willful violation of Civil Code sections 798 *et seq.* by ACACIA and PACIFICA and its management.

175.    ACACIA and PACIFICA are further liable for punitive damages pursuant to Cal. Civ. Code §§ 3294 because its officer, director, managing member, and sole owner, DEEPAK ISRANI was negligent in hiring Park agents and employees, including ROSALINDA BLACKMAN, and maintenance person(s) DOE 2, none of whom were properly trained to address Park maintenance, problems, and health and safety hazards in the Park and as such were unfit for their jobs. DEEPAK ISRANI failed to train and direct his employees to protect residents from harm by substantially failing to provide and maintain the Park in good working order and condition. The employees were not trained by DEEPAK ISRANI to detect unsafe or dangerous conditions, and Plaintiffs are informed and believe were instructed by DEEPAK ISRANI to avoid involvement in the Park residents' safety needs or even to inquire about potential safety concerns. ACACIA and PACIFICA's managing agent, DEEPAK ISRANI , who decides what maintenance and repairs are to be done at the Park, and is ultimately responsible to make the Park safe did not properly train and supervise ACACIA and PACIFICA's employees to provide safety and health awareness and protection to prevent low income tenants from being harmed. ACACIA and PACIFICA's managing agent DEEPAK ISRANI adopted and/or approved ACACIA and PACIFICA's employees' conduct after it occurred by accepting what they did without any reprimand or changing the manner and procedures by which its employees perform in similar situations such as the ones involving Plaintiffs. ACACIA and PACIFICA are guilty of malice in that their conduct was despicable conduct which was carried on with a willful and conscious disregard of the rights and safety of Plaintiffs.

Also, ACACIA and PACIFICA are guilty of oppression because their conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing and/or conscious disregard of their rights and safety. ACACIA and PACIFICA's managing agent DEEPAK ISRANI adopted and approved the conduct alleged herein by not changing ACACIA and PACIFICA's methods and procedures even though Plaintiffs were injured as a result of its failure to act. Under Civil Code §3294, punitive damages can be assessed against ACACIA and PACIFICA in these circumstances because ACACIA and PACIFICA had advance knowledge of the unfitness of one or more of its employees, including ROSALINDA BLACKMAN and maintenance person(s) DOE 2, and employed them in conscious disregard of the rights and safety of Plaintiffs. Plaintiffs are informed and believe and thereon allege, to protect ACACIA and PACIFICA's monetary assets over the health and safety of Plaintiffs, ACACIA and PACIFICA engaged in despicable conduct in conscious disregard of Plaintiffs' rights to health and safety. ACACIA and PACIFICA engaged in conduct from which it knew or should have known it was highly probable harm to Plaintiffs would result. Pursuant to Cal. Civ. Code §§ 3294 and 798.86, ACACIA and PACIFICA is liable for punitive damages. In the alternative, Plaintiffs request statutory penalties for each willful violation of Cal. Civ. Code § 798 et seq. by ACACIA and PACIFICA.

## EIGHTH CAUSE OF ACTION

### BREACH OF THE COVENANT OF QUIET ENJOYMENT

### BY ALL PLAINTIFFS AGAINST RODEO, ACACIA & PACIFICA

176. Plaintiffs reallege and incorporate paragraphs 1 through 175.

177. Identities of Plaintiffs asserting a cause of action for breach of the covenant of quiet enjoyment:

a. All Plaintiffs except MARIA ENCARNACION V. and JUAN GONZALEZ assert a cause of action for breach of the covenant of quiet enjoyment against RODEO for acts and omissions committed against Plaintiffs during the relevant times of RODEO's period of Park ownership/operation (from January 19, 2010 to July 19, 2015).

///

///

b. All Plaintiffs including MARIA ENCARNACION V. and JUAN GONZALEZ assert a cause of action for breach of the covenant of quiet enjoyment against ACACIA and PACIFICA for acts and omissions committed against Plaintiffs during the relevant times of their Park ownership/operation (from July 20, 2015 through the present).

178. Implicit in Plaintiffs' tenancy and rental/lease agreements with RODEO, ACACIA, and PACIFICA during their respective periods of Park ownership/operation (RODEO from January 19, 2010 to July 19, 2015 and ACACIA and PACIFICA from July 20, 2015 through the present) and explicit in Cal. Civ. Code § 798.26 (a) is the covenant of quiet enjoyment giving rise to a duty in Defendants to preserve and/or not interfere with Plaintiffs' quiet enjoyment of the premises.

179. RODEO, ACACIA, and PACIFICA breached the covenant by failing to provide and maintain the Park as set forth herein and in paragraphs 35-37, and by their other actions as alleged throughout this Third Amended Complaint, by including but not limited to, interfering with Plaintiffs' ability to sell their mobilehomes in place, failing to enforce rules and regulations, not obeying their own rules and regulations, and/or entering Plaintiffs' homes or spaces.

180. As a proximate result of this breach, Plaintiffs have been damaged as alleged in paragraph 39.

## NINTH CAUSE OF ACTION

### BREACH OF UNFAIR COMPETITION LAW

### BY ALL PLAINTIFFS AGAINST RODEO, ACACIA & PACIFICA

181. Plaintiffs reallege paragraphs 1 through 180.

182. Plaintiffs have standing to sue under Business and Professions Code § 17200 because they have suffered injury in fact and have lost money or property as a result of Defendants' unfair competition, which includes unfair and/or unlawful business practices, as set forth in Business and Professions Code § 17200 et seq, Proposition 64, and case law.

183. Plaintiffs have standing because, during each of Defendants' respective periods of Park ownership and operation (RODEO from January 19, 2010 to July 19, 2015 and ACACIA and PACIFICA from July 20, 2015 through the present), Plaintiffs lost money, i.e., the overcharges they paid, or have been deprived of money to which they have a cognizable claim; have a present or

future property interest diminished, and/or have surrendered more (in the transactions for payment of maintenance services that Defendants promised in return for their rent, utility and other charges), and have acquired less, than they would otherwise have if Defendants had not committed the unfair, and/or unlawful business practices alleged in this Complaint. Plaintiffs have received what they paid for under their rental/lease agreements because the leaseholds are worth less than paid for and the product or service Defendants promised under those agreements is unsatisfactory, and Plaintiffs overpaid for their leaseholds, and the Defendants' renting of defective Park conditions is an injury in fact, and by overpaying for utilities, because Defendants misread the meters, Plaintiffs suffered injury-in-fact because Defendants have retained the undisclosed portion of the utility charges that were neither disclosed as exceeding Defendants' actual costs paid to the utility company and did not disclose that the charges were not used for repair and/or upkeep of the Park utility systems. Also, Defendants' preparation of the utility bills and rent statements containing inaccurate and erroneous information regarding due and owing charges is sufficient injury to Plaintiffs to confer standing under Proposition 64.

a.      Defendant have engaged and are engaging (RODEO from January 19, 2010 to July 19, 2015 and ACACIA and PACIFICA from July 20, 2015 through the present) in unlawful, fraudulent and/or unfair business acts or practices that violate Business and Professions Code § 17200 by operating the Park with unsafe and defective conditions in violation of the specific state statutes, health and safety regulations and other housing laws alleged in this thIRD Amended Complaint, by interfering with Plaintiffs' right to sell their homes in place in violation of the MRL, and by charging excessive rent for the Park leaseholds which are not worth the amount charged, and by engaging in a scheme to mislead Plaintiffs as consumers into believing through written promises in their rental agreements that Defendants would provide and maintain the Park improvements in good working order and condition at a level that would be worth the amount they paid to Defendants.

b.      The actions and conduct of Defendants are unfair under Business and Professions Code § 17200 because (i) the consumer injury to Plaintiffs is substantial, the injury is not outweighed by any countervailing benefits to consumers or competition, and the injury is not one Plaintiffs could have reasonably avoided or (ii) Defendants' conduct threatens an incipient violation of the MRL

and/or Mobilehome Parks Act, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law; the harm to the victims, i.e., the Plaintiffs, outweighs its benefits to Defendants; and the unfairness alleged herein under § 17200 is tethered to a legislatively declared policy as follows: the public policy that is violated by Defendants' conduct and actions is found in Cal. Civ. Code § 798.55, which provides for unique protection of mobilehome owners from actual or constructive eviction, and in Health and Safety Code § 18250, which provides:

> Because of the relatively permanent nature of residence in such parks and the substantial investment which a manufactured home or mobilehome represents, residents of mobilehome parks are entitled to live in conditions which assure their health, safety, general welfare, and a decent living environment, and which protect the investment of their manufactured homes and mobilehomes.

184.    Plaintiffs have paid excess rent to Defendants for services and conditions that were never provided to them by Defendants. Plaintiffs have paid excess charges for utilities to Defendants because Defendants have improperly read some Plaintiffs' meters and improperly billed Plaintiffs for utilities in violation of Civ. Code §798.40 and failed to use the utility funds collected from Plaintiffs to maintain and repair the utility facilities in violation of the Public Utilities Act, including but not limited to Public Utilities Code § 739.5.

185.    Defendants' violations of statutes, ordinances and codes and other actions constitute unlawful, fraudulent and/or unfair business acts or practices in violation of California Business and Professions Code, § 17200, *et seq.*, based on the specific facts alleged throughout this Complaint.

186.    As a proximate result of Defendants' unlawful, fraudulent and/or unfair business acts or practices, Plaintiffs have suffered injury in fact in incurring monetary losses by paying excess rent to Defendants, and as alleged above for standing, and Defendants have been unjustly enriched by profits from the submetering utilities but have not used the profits to repair, replace or maintain the utilities. Plaintiffs are entitled to restitution of the losses and the excess rental amount they have paid, which Defendant received but to which they are entitled and a disgorgement of Defendants' improper profits. Plaintiffs also are entitled to injunctive relief enjoining these unfair, fraudulent and/or unlawful business practices.

///

## TENTH CAUSE OF ACTION

## DECLARATORY AND INJUNCTIVE RELIEF

## BY ALL PLAINTIFFS AGAINST RODEO, ACACIA & PACIFICA

187.   Plaintiffs reallege and incorporate paragraphs 1 through 186.

188.   An actual controversy now exists between Plaintiffs and RODEO, ACACIA and PACIFICA in that Plaintiffs contend:

a.   Plaintiffs have a right to continued tenancies in the Park at a rent level that corresponds to the reasonable worth of their tenancies;

b.   RODEO was contractually and legally bound to provide and maintain the physical improvements and common facilities in good working order and condition from January 19, 2010 to July 19, 2015. ACACIA and PACIFICA are contractually and legally bound to provide and maintain the physical improvements and common facilities in good working order and condition from July 20, 2015 through the present.

c.   Due to poor Park maintenance, Park rent levels are and have been unreasonably high during each Defendants' period of Park ownership and operation; and

d.   Plaintiffs have/had the right to sell their homes in place without interference from Defendants during each Defendants' period of Park ownership and operation.

112.   Defendants contend the contrary and deny they are obligated to fulfill these duties or that Plaintiffs have these rights.

113.   By virtue of the conditions alleged in this Third Amended Complaint, Plaintiffs seek a declaration by the Court of their rights and obligations respecting their continued tenancies in the Park as to ACACIA and PACIFICA, their respective duties under the leases or rental agreements, and rent levels.

114.   By virtue of the conditions alleged in this Complaint, Plaintiffs request an injunction from the Court enjoining certain actions of ACACIA and PACIFICA as current Park owner/operators and ordering them to make repairs and replacements to the Park.

///

///

I:\0054.001\Pleadings 001\FTM\015 Third Amended Complaint.wpd

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

ON ALL CAUSES OF ACTION EXCEPT THE NINTH AND TENTH:

1.   For general damages;

2.   For special damages according to proof;

3.   For prejudgment interest on the amount of any damages awarded;

ON ALL CAUSES OF ACTION EXCEPT THE NINTH:

4.   For a permanent injunction requiring Defendants to repair the Park's sewer, water, gas, drainage, lighting, street, and electrical systems, trees and landscaping; abate any other nuisances alleged herein; as well as to comply with codes, statutes, and ordinances; and to not interfere with sales of homes or trespass on Plaintiffs' spaces.

ON THE FIRST, FOURTH, FIFTH, SIXTH AND SEVENTH CAUSES OF ACTION:

5.   For damages for personal and bodily injury, including doctor's care, medical expenses, and annoyance and discomfort, mental suffering and emotional distress;

6.   For punitive damages as assessed by the trier-of-fact;

ON THE NINTH CAUSE OF ACTION:

7.   For a permanent injunction enjoining unfair methods of competition, unfair, fraudulent or unlawful business practices, or unfair or deceptive acts or practices on consumers;

8.   For an order requiring restitution of Plaintiffs' overpayments and over or illegal charges, Defendants to disgorge any improper profits and restore to Plaintiffs monetary losses resulting from Defendants' unfair business practices; for restitution to Plaintiffs of those charges or overpayments or losses; and any prejudgment interest thereon;

ON THE TENTH CAUSE OF ACTION:

9.   For a declaration of Plaintiffs' rights and obligations respecting Plaintiffs' continued tenancies, leases and rental agreements in the Park and rent levels, and sale and use of their mobilehomes and a declaration of Defendants' duties;

///

///

///

ON ALL CAUSES OF ACTION:

10.    For attorneys' fees incurred herein pursuant to the Mobilehome Residency Law and express contracts between Plaintiffs and Defendants, and pursuant to any other applicable statutes or laws;

11.    For costs and expenses incurred herein, including litigation expenses and costs of experts, either as costs, expenses or to be proven as damages at time of trial;

12.    For statutory penalties under applicable causes of action, or as an alternative to punitive damages under the MRL;

13.    For such other and further relief as the Court may deem just and proper.


DATED:  January 14, 2019                    ALLEN, SEMELSBERGER & KAELIN, LLP


                                            By: _____
                                                JAMES C. ALLEN
                                                DAVID SEMELSBERGER
                                                JESSICA S. TAYLOR
                                                Attorneys for Plaintiffs
                                                MONICA GONZALEZ, et al.

# EXHIBIT A

**From:** Daniel Castaneda <dscblaw@gmail.com>
**Date:** December 21, 2016 at 3:49:55 PM PST
**To:** Joseph Fox <JFox@murchisonlaw.com>
**Subject: Re: Acacia MHP vs. Gonzalez**

Mr. Fox,

I have reviewed the documentation you have provided and although it appears that a portion of the issues regarding habitability may have been addressed my client finds that there are several issues still pending.

Specifically, sewage continues to back up and flood the southern portion of the park causing a foul smell to emanate throughout the park. Repairing the sewage lines adjacent to my client's property is not enough. The sewage lines need to be repaired throughout the entire park. I must remind you that your client is to provide habitable premises throughout the park and not only around my client's lot.

Further, although rodent bait stations have been placed in the premises, rats, cockroaches and other vermin continue to roam freely throughout the park.

Regarding the dead dog, I can provide declarations by over thirty tenants who claim they saw a dead dog and approximately a month ago saw another one.

The conditions in the park remain uninhabitable and until all issues are address my client will not stipulate to the contrary.

In addition, I would like to take this opportunity to inform you that I have been retained by over thirty of your client's tenants who are considering filing individual actions against your client for tortious breach of the implied warranty of habitability, nuisance, breach of covenant of quiet enjoyment, negligence and violation of civil code §1942.4.

Most of my clients have lived in the park for several years and have tolerated your client's neglect of the park. Despite the conditions they live in, they have paid their rent on time. However, in October of this year they received notice that their rent would go up in November and that they would be charged a flat rate of $60.00 for water and $15.00 for trash services. The increase in rent and the arbitrary figure charged for water services has caused them all to reconsider their relationship with the park and would like an opportunity to renegotiate the terms of the proposed lease. Further, in accordance to Civil Code §798.30, your client was required to give a 90 day notice of the increase in rent, not 30, thus the new rental agreement is defective and unenforceable.

There are several additional defects present at the park which each tenant intends to bring up in their respective complaints. These include but are not limited to, poor lighting throughout the park, lack of bathrooms, lack of showers, inadequate laundry facilities, unsafe environment, sewage leakage/clogging and the presence of rats and vermin throughout the park. Lastly, the park appears to not follow adequate procedures when charging residents for the utilities provided in violation Civil Code §798.40(a).

For these reasons each one of my clients will be withholding their rental payments and will be ready to place said funds in trust until all the necessary repairs are completed. It is well established precedent that performance of the implied warranty of habitability is a condition precedent to a tenant's duty to pay rent. *Green v. Superior Court* (1974) 10 Cal.3d 616.

Let this correspondence serve as notice of our intention to commence an action against your client under Civil Code §798.84 based on the above referenced habitability issues.

If you decide to schedule an exparte hearing on the underlying case, expect declarations from several tenants who are willing to testify under oath as to the continuous sewage problems as well as the vermin present in the park. Pictures and expert testimony will also be provided.

Respectfully,

JAMES C. ALLEN, ESQ. (SBN 105283)
JESSICA S. TAYLOR, ESQ. (SBN 294363)
ALLEN, SEMELSBERGER & KAELIN, LLP
600 B STREET, SUITE 2400
SAN DIEGO, CA  92101-4582
Telephone (619)544-0123
FAX (877)468-0677

Attorneys for Plaintiffs
Monica Gonzalez, et al.

| | |
|---|---|
| **Superior Court of the State of California**<br>**County of San Diego**<br>     330 W. Broadway<br>     San Diego, CA 92101<br>     Hall of Justice Courthouse | |
| Plaintiff(s):    Monica Gonzalez, et al.<br><br>Defendant(s):    Acacia Mobile Home Park, LLC,<br>                 et al. | CASE NO: 37-2017-00008348-CU-BT-CTL<br><br>HON. Eddie C. Sturgeon<br>DEPT: C-67 |
| **PROOF OF SERVICE-CIVIL** | |

1.    At the time of service I was over 18 years of age and not a party to this action.
2.    My business address is:  600 B Street, Suit 2400, San Diego, California 92101.
3.    On January 14, 2019, I served the following documents:

•    THIRD AMENDED COMPLAINT

4.    I served the documents on the persons below, as follows:

Guillermo Marrero, Esq.                    Attorneys for Plaintiffs Angelina
Chelsea Yamabe, Esq.                       Alvarado, et al.
International Practice Group, P.C.
1350 Columbia Street, Suite 500
San Diego, CA 92101
tel: 619-515-1482; fax: 619-515-1481

Daniel S. Castaneda, Esq.                  Attorneys for Plaintiffs Angelina
Law Office of Daniel S. Castaneda          Alvarado, et al.
3065 Rosecrans Place, Suite 204
San Diego, CA 92110
tel: 619-710-6095; 619-566-4128

Miles D. Grant, Esq.                       Attorneys for Defendant and Cross-
Stuart D. Hirsch, Esq.                     Complainant, Acacia Mobile Home Park,
The Grant Law Firm                         LLC
1331 India Street
San Diego, CA 92101
tel: 619-233-7078; fax: 619-233-7036
stu@grantandkessler.com

John H. Pentecost, Esq.                    Attorneys for Defendant and Cross-
Robert G. Williamson, Esq.                 Complainant, Acacia Mobile Home Park,
Hart King                                  LLC
4 Hutton Centre Drive, Suite 900
Santa Ana, CA 92707
tel: 714-432-8700; fax: 714-546-7457
jpentecost@hartkinglaw.com
rwilliamson@hartkinglaw.com

Robert F. Tyson, Esq.                      Attorneys for Defendant and Cross-
David J. Kahn, Esq.                        Defendants, Rodeo Funding Group, LLC
Kathryn Lee, Esq.                          and Yolanda Martinez
Tyson & Mendes
5661 La Jolla Boulevard
La Jolla, CA 92037
tel: 858-459-4400; fax: 858-459-3864

5.    The documents were served by the following means:

a.  [X]  **By United States mail.** I enclosed the documents in a sealed envelope or
         package addressed to the persons at the addresses in item 4 and:

         (1)  [ ]  deposited the sealed envelope with the United States Postal Service,
                   with the postage fully prepaid.

         (2)  [X]  placed the envelope for collection and mailing, following our
                   ordinary business practices. I am readily familiar with this
                   business's practice for collecting and processing correspondence for
                   mailing. On the same day that correspondence is placed for
                   collection and mailing, it is deposited in the ordinary course of
                   business with the United States Postal Service, in a sealed envelope
                   with postage fully prepaid.

     I am a resident or employed in the county where the mailing occurred. The
     envelope or package was placed in the mail at San Diego, California.

b.  [ ]  **By overnight delivery.** I enclosed the documents in an envelope or package
         provided by an overnight delivery carrier and addressed to the persons at the
         addresses in item 4. I placed the envelope or package for collection and
         overnight delivery at an office or a regularly utilized drop box of the
         overnight carrier.

c.  [ ]  **By fax transmission.** Based on an agreement of the parties to accept service
         by fax transmission, I faxed the documents to the persons at the fax numbers
         listed in item 4. No error was reported by the fax machine that I used. A
         copy of the record of the fax transmission, which I printed out, is attached.

d.  [ ]  **By e-mail or electronic transmission.** Based on a court order or an agreement
         of the parties to accept service by e-mail or electronic transmission, I
         caused the documents to be sent to the persons at the e-mail addresses listed
         in item 4. I did not receive, within a reasonable time after the
         transmission, any electronic message or other indication that the transmission
         was unsuccessful.

I:\0054.001\Pleadings 001\FTM\POS 01 14 19 (3rd amnd x-compl).wpd    - 2 -

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:   January 14, 2019

____Susan Bird_____          _____
(Type or Print Name of Declarant)                 (Signature of Declarant)

I:\0054.001\Pleadings 001\FTM\POS 01 14 19 (3rd amnd x-compl).wpd     — 3 —

PROOF OF SERVICE-CIVIL