UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>                                    Plaintiff,<br><br>v.<br><br>ACACIA MOBILE HOME PARK LLC;<br>and DOES 1 through 10, inclusive,<br><br>                                    Defendants. | Case No.:  23-CV-2072 JLS (SBC)<br><br>**ORDER (1) GRANTING PLAINTIFF'S AND DEFENDANT'S REQUESTS FOR JUDICIAL NOTICE, (2) DENYING DEFENDANT'S MOTION FOR STAY, AND (3) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF Nos. 11, 15) |

Presently before the Court are Plaintiff Nautilus Insurance Company's ("Nautilus") Motion for Summary Judgment, or Alternatively, Partial Summary Judgment ("MSJ," ECF No. 11) and Memorandum of Points and Authorities in Support thereof ("Mot. Mem., ECF No. 11-1), Defendant Acacia Mobile Home Park LLC's ("Acacia") Opposition thereto ("Opp'n," ECF No. 15), and Plaintiff's Reply ("Reply," ECF No. 16).  Also before the Court are a Request for Judicial Notice filed by Plaintiff ("Pl.'s RJN," ECF No. 11-2) and a Request for Judicial Notice filed by Defendant ("Def.'s RJN," ECF No. 15-2). Additionally, the Court construed Acacia's Opposition to include a Motion for Stay, which the Court ordered supplemental briefing on.  *See* Order for Supplemental Briefing ("Suppl.

Br. Order"), ECF No. 17.  Both Parties filed Supplemental Briefs, which are also presently before the Court.  Plaintiff Nautilus Insurance Company's Supplemental Reply Brief ("Pl.'s Suppl. Br."), ECF No. 20; Defendant Acacia Mobile Home Park, LLC's Supplemental Briefing ("Def.'s Suppl. Br."), ECF No. 21.  The Court heard oral argument on October 15, 2024.

Having carefully considered the Parties' arguments, both in their briefing and at oral argument; the evidence; and the law, the Court **GRANTS** both Requests for Judicial Notice, **DENIES** Defendant's Motion for Stay, **GRANTS** Plaintiff's Motion for Summary Judgment as follows.

**BACKGROUND**

Neither Party submitted a statement of undisputed facts, but the facts that follow go undisputed in the Parties' moving papers.

**I.    Undisputed Facts**

Nautilus, a provider of commercial insurance policies, issued Commercial Lines Policy No. NC487355 ("Policy") to Acacia, a mobile home park owner effective April 5, 2019, to April 5, 2020.  Declaration of Jon Abood ("Abood Decl.") ¶ 3, ECF No. 11-5. The Policy provided Commercial General Liability ("CGL") coverage to Acacia for bodily injury, property damage, and personal and advertising injury related to the mobile home park that Acacia owns located at 324 54th St., San Diego, CA 92114 ("Park").  *Id.*; Ex. C, ECF No. 11-6 ("Pol.") at 20, 25, 36.  The Policy spans over 70 pages and contains various declarations, common policy conditions, coverage forms, and endorsements that modify the baseline coverage.  *See* Pol. at 2.

On July 19, 2023, Nautilus was informed that Acacia was a named defendant in multiple civil lawsuits in San Diego Superior Court—one filed in March 2017 and the other filed in June 2019—that potentially implicated the Policy.  Ex. D, ECF No. 11-7.  On September 20, 2023, Nautilus informed Acacia, through coverage counsel in connection with the underlying lawsuits, that it agreed to defend Acacia "under a full and complete reservation of rights."  Ex. E, ECF No. 11-9 ("Rsrv. of Rts.") at 2.  In the Reservation of

Rights, Nautilus specifically reserved its rights under the Habitability Exclusion, which will be explained below. *See id.* at 12–13. The instant lawsuit followed in which Nautilus seeks to invoke this reservation. *See* Complaint ("Compl."), ECF No. 1.

### A.    *The Policy*

The Policy begins with a two-page "Schedule of Forms and Endorsements," which is essentially a table of contents. *Id.* at 4–5. Listed on page one of the Schedule, and most pertinent to the instant Motion, are the "Commercial General Liability Coverage Form" and the "Habitability Exclusion," both of which are located in the "Commercial General Liability" section. *Id.* at 4.

The "Commercial General Liability Coverage Form" is the heart of the Policy, with Section One of the Form dividing up the general categories of coverage. Within Section 1 are Coverage A, which insures against "Bodily Injury and Property Damage Liability," *id.* at 20, Coverage B, which insures against "Personal and Advertising Injury Liability," *id.* at 25, and Coverage C, which insures against "Medical Payments," *id.* at 27. Within each Coverage are an Insuring Agreement—which defines the terms of the coverage—and exclusions that modify that particular category of coverage. *See generally id.*

The endorsements begin about halfway through the Policy, and that is where the "Habitability Exclusion" exists. Endorsements are modifications to the baseline coverage, and they are the only means of achieving such a modification. *Id.* at 6 ("This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy."). The "Habitability Exclusion" is on its own page, which states in all-caps at the top: "THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY." *Id.* at 49. The Exclusion applies to all three coverage categories noted above—Category A, Category B, and Category C—and it states:

> A.
>
> . . .
>
> This insurance does not apply to damages or expenses due to "bodily injury", "property damage", "personal and advertising

injury" or medical payments arising out of or resulting from the alleged or actual:

> 1.      Violation of any federal, state, county, or local laws, ordinances, statutes, programs, rules, health codes, or any other violation including, but not limited to, any Housing and Urban Development laws, rent stabilization laws and ordinances, state or local Section 8 (government subsidy) programs; any administrative rules or regulations pertaining to any of the foregoing including, but not limited to, those promulgated by local municipalities;
>
> 2.      Failure of any insured to maintain any premises in, or restore any premises to, a safe, sanitary, healthy, habitable, or tenantable condition; or
>
> 3.      Wrongful eviction, either actual or constructive, arising out of **1.** or **2.** above.
>
> B.      We will have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of the above.

*Id.*

## B.      *The Underlying Lawsuits*

The Policy was implicated when a number of current and former residents of the Park brought a pair of lawsuits in state court against Acacia in March 2017 and June 2019. Ex. A, ECF No. 11-3 ("*Delacruz I*"); Ex. B, ECF No. 11-4 ("*Delacruz II*"). The lawsuits were consolidated in the San Diego Superior Court, and the consolidated lawsuit now encompasses 72 plaintiffs who lived on 48 spaces in the Park. Ex. 1, ECF No. 15-1 ("Joint Rep.") at 5.

The claims that remain in the consolidated action—nuisance, negligence, breach of contract, breach of covenant of good faith and fair dealing, breach of quiet enjoyment,

intentional interference with property rights, breach of statutes, and breach of warranty of habitability—closely resemble those originally alleged in *Delacruz I* and *Delacruz II*. *Compare id.* at 81–87, *with Delacruz I* at 2, *and Delacruz II* at 2. Though lengthy, these claims can be summarized as allegations "that [Acacia] ha[s] failed to maintain the Park in good order and condition and/or ha[s] otherwise engaged in 'unfair' business conduct." Joint Rep. at 5. The Court recites several of the factual allegations from the original complaints as representative of the collective whole:

> (a)     Failing to maintain, service, repair and maintain in proper working condition the sewer system, causing sewage backups in homes, sewage overflows or spills in the Park, streets, spaces, or near homes; the smell of sewage, sewage odors, difficulty with or slow flushing toilets, leaks, stoppages or back flows, and failing to clean up sewage spills resulting in unsanitary conditions, damage to homes and property;
>
> . . .
>
> (c)     Failing to provide potable sanitary drinking water in violation of Civil Code § 798.40, Civil Code § 798.41; Civil Code § 798.42; 25 CCR § 1102, § 1116, Section 18300.
>
> . . .
>
> (x)     Increas[ing] rent and utility fees without proper prior notice . . . result[ing] in overcharges or improper billing for utilities.
>
> . . .
>
> Entering Plaintiffs' spaces without notice and for no legitimate reason[; and] interfering with the sales of Plaintiff's homes.

*Delacruz I* ¶¶ 35, 73, 75.

As mentioned above, Nautilus agreed to defend Acacia against the above claims, but it did so "under a full and complete reservation of rights." Rsrv. of Rts. at 2. In that

reservation of rights, Nautilus took the position that the plaintiffs in the underlying lawsuits "allege[d] a multitude of habitability conditions were present at the Park during their tenancies," *id.* at 13, and it reserved "the right to bring a declaratory judgment action to confirm there is no coverage for this matter under the [Policy]," *id.* at 2. Nautilus now seeks to vindicate that position with the present lawsuit.

## II.    Procedural Background

Nautilus initiated this action on November 9, 2023, asserting two claims for declaratory judgment—one disputing its duty to defend and the other disputing its duty to indemnify—and two claims for reimbursement—one for defense expenses and the other for indemnity payments. *See* Compl. ¶¶ 19–39. In addition to alleging that the insurance coverage at issue is excluded by the Habitability Exclusion, Nautilus also alleges that the insurance coverage at issue is excluded due to Acacia's failure to timely inform Nautilus of the underlying lawsuits. *Id.* Acacia answered on February 6, 2024, *see* ECF No. 6, and the instant Motion followed on July 22, 2024, *see* MSJ. The Motion focuses exclusively on the Habitability Exclusion.

### REQUESTS FOR JUDICIAL NOTICE

Plaintiff asks the Court to take judicial notice of two documents, which are associated with *Delacruz I* and *Delacruz II*, respectively. The documents at issue include:

(1)    A Third Amended Complaint filed in the California Superior Court case *Monica Gonzalez Delacruz, et al. v. Acacia Mobile Home Park LLC, et al.*, No. 37-2017-00008348-CU-BT-CTL    (Cal. Super. Ct.    San Diego Cnty. Mar. 8, 2017). *See* Pl.'s RJN Ex. A, ECF No. 11-3.

(2)    A Complaint filed in the California Superior Court case *Jonathan Gonzalez Delacruz    v.    Acacia    Mobile    Home    Park,    LLC*, No. 37-2019-00028715-CU-BC-CTL    (Cal. Super. Ct.    San Diego Cnty. June 5, 2019). *See* Pl.'s RJN Ex. B, ECF No. 11-4.

Defendant asks the Court to take judicial notice of one document, which is associated with *Delacruz I*. The document at issue includes:

(1)    A Joint Trial Readiness Conference Report filed in the California Superior Court case *Monica Gonzalez Delacruz, et al. v. Acacia Mobile Home Park LLC, et al.*, No. 37-2017-00008348-CU-BT-CTL (Cal. Super. Ct. San Diego Cnty. Mar. 6, 2023). *See* Def.'s RJN Ex. 1, ECF No. 15-1.

Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Accordingly, '[a] court may take judicial notice of matters of public record . . . .'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (first alteration in original) (quoting *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001)). "But a court cannot take judicial notice of disputed facts contained in such public records." *Id.*

The Court **GRANTS** both RJNs as to all Exhibits, as "court filings and orders from other proceedings are proper subjects of judicial notice." *Sierra v. Costco Wholesale Corp.*, 630 F. Supp. 3d 1199, 1208 (N.D. Cal. 2022). In so doing, the Court should take "notice only of the authenticity and existence of" each "order or pleading." *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 878 (N.D. Cal. 2013). Conversely, the Court should not take "notice of any of these documents to establish the truth of the underlying factual contention or the accuracy of the legal conclusions set forth therein." *Pac. Marine Ctr., Inc. v. Philadelphia Indem. Ins. Co.*, No. 113CV00992DADSKO, 2016 WL 8730668, at *4 (E.D. Cal. Mar. 18, 2016).

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect

the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party.  *Celotex*, 477 U.S. at 323.  The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact.  *Id.*  When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial.  *Celotex*, 477 U.S. at 324.  This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248.  The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings."  *Anderson*, 477 U.S. at 256.

## II.    Analysis

Nautilus seeks four declarations: (1) that it has no duty to defend Acacia in the underlying actions, (2) that it has no duty to indemnify Acacia in the underlying actions, (3) that it is entitled to reimbursement for expenses incurred as a result of defending Acacia

in the underlying actions, and (4) that it is entitled to reimbursement for indemnification payments incurred as a result of the underlying actions. *See* Compl. Nautilus moves for summary judgment as to all claims, arguing that it had no duty from the outset to defend Acacia under the Habitability Exclusion thereby entitling it to relief on all claims as a matter of law. *See* MSJ. Before resolving Nautilus's Motion, however, the Court addresses Acacia's invitation in its Opposition for the Court to stay the present matter.

### A. Acacia's Motion for Stay

In concluding its Opposition, Acacia "respectfully submits that this matter should be stayed pending [the underlying trial]." Opp'n at 20. Acacia explains that "California courts have expressed . . . concern regarding [the insured] litigating insurance coverage simultaneously as the underlying dispute is being litigated," including the risk that factual overlap between the lawsuits might result in the insured being collaterally estopped from contesting issues that are better left for the state court to decide. *Id.*

In reply, Nautilus contends that the legal issue before the Court in this matter "is simply not at issue in the Underlying Actions and has no impact on the insured's alleged liability for underlying plaintiffs' damages." Reply at 11. Thus, according to Nautilus, Acacia is not entitled to a stay.

Although not formally labeled as such, the Court construed Acacia's request as a Motion for Stay and ordered supplemental briefing on the issue so that the Court could "properly 'assess how judicial economy, comity and federalism are affected in [this] case.'" Suppl. Br. Order at 2 (quoting *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225–26 (9th Cir. 1998)). Both Parties timely filed Supplemental Briefs with the Court. *See* Pl.'s Suppl. Br.; Def.'s Suppl. Br.

The Declaratory Judgment Act provides in relevant part: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Because "the Declaratory Judgment Act is 'deliberately cast

in terms of permissive, rather than mandatory, authority,'" *Dizol*, 133 F.3d at 1223 (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250 (1952) (Reed, J., concurring)), courts have discretion whether to entertain an action for a declaratory judgment, *Pub. Affs. Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494. But "this discretion is not unfettered," and "[a] District Court cannot decline to entertain such an action as a matter of whim or personal disinclination." *Dizol*, 133 F.3d at 1223 (quoting *Pub. Affairs Assocs., Inc.*, 369 U.S. at 112). Consequently, "[a] district court may, in its discretion, stay or dismiss a federal case in favor of related state proceedings: (1) when an action seeks only declaratory relief . . . , or (2) when exceptional circumstances exist." *Id.* (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282–88 (1995); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983)). If an action seeking declaratory judgment presents an actual case or controversy and fulfills jurisdictional prerequisites, a district court must make a discretionary determination that entertaining the action is appropriate. *Id.* at 1222–23.

Though discretionary, "the court must decide whether to exercise its jurisdiction by analyzing the factors set out in *Brillhart v. Excess Ins*[*urance*] *Co.*, 316 U.S. 491 (1942), and its progeny."[1] *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). "Essentially, the district court 'must balance concerns of judicial administration, comity, and fairness to the litigants.'" *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) (citing *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991)). *Brillhart* sets forth a non-exclusive list of factors advising that a "district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Dizol*, 133 F.3d at 1225. A number of other considerations may be relevant: whether the declaratory action will settle all aspects of the controversy; whether the

---

[1] Plaintiff's argument that Defendant is not entitled to a stay under Federal Rule of Civil Procedure 56(d) is inapplicable, *see* Pl.'s Suppl. Br. at 3, as the Court construes Defendant to be requesting a stay pursuant to the Court's inherently discretionary powers under the Declaratory Judgment Act.

declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems.  In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.  *Id.*

As an initial matter, the issues to be decided in this Court and those to be decided in the underlying actions are entirely distinct.  Determining Nautilus's coverage obligations under the Policy, as the Court is tasked with here, requires no factual inquiry whatsoever into Acacia's potential liability in *Delacruz I* and *Delacruz II*.  It simply requires the Court to establish the breadth of the Habitability Exclusion and to compare the Exclusion to the allegations in the underlying lawsuits.  Thus, this case requires nothing more than "application of settled principles of state law," *First Mercury Ins. Co. v. Great Divide Ins. Co.*, 203 F. Supp. 3d 1043, 1054 (N.D. Cal. 2016), and the first *Brillhart* factor—avoiding needless determination of state law issues—weighs against granting Defendant's Motion for Stay.

Moreover, there is no evidence that Nautilus is engaged in forum shopping as it is not "seek[ing] to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1371 (9th Cir. 1990).  Indeed, "it is a common practice for insurers to seek declaratory relief in federal court while underlying cases are proceeding in state court." *Northfield Ins. Co. v. Civic Ctr. Hotel, LLC*, 239 F. Supp. 3d 1163, 1172 (N.D. Cal. 2017). The Court cannot identify any hint of gamesmanship here nor does Defendant suggest one, so the second *Brillhart* factor—discouraging litigants from filing declaratory actions as a means of forum shopping—weighs against granting Defendant's Motion for Stay.

The Court is also not persuaded by Acacia's argument that "resolution of the declaratory action does depend upon related issues yet to be litigated in the Underlying Actions."  Def.'s Suppl. Br. at 6.  The only evidentiary support presented to the Court on

summary judgment in this case relates to the allegations in the underlying lawsuits as pled in the complaints, *see Delacruz I*; *Delacruz II*, the Policy, *see* Pol., and Nautilus's reservation of rights, *see* Rsrv. of Rts. Neither Party relies on any extrinsic evidence that might bear relevance to Acacia's potential liability in the underlying lawsuits, and there is simply no factual overlap between the declaratory judgment Nautilus seeks in this Court and the issues to be determined in state court. *Cf. Citizens Ins. Co. of Am. v. Chief Digital Advisors*, No. 20-cv-1075-MMA (AGS), 2020 WL 8483913, at *3 (S.D. Cal. Dec. 22, 2020) (granting a stay in an insurance coverage dispute where the court had to examine conduct that was implicated in the underlying lawsuit). The third *Brillhart* factor—avoiding duplicative litigation—thus also weighs against granting Defendant's Motion for Stay.

Beyond the *Brillhart* factors, the Court must also consider "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice . . . ." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)).

Beginning with the hardship that Nautilus may suffer in being required to proceed in this matter, the record is inconclusive. Although Nautilus acknowledges that the Court "must 'balance[e] [sic] the insured's interest in not fighting a two-front war against the insurer's interest in not being required to continue paying defense costs which it may not owe and likely will not be able to recoup,'" Pl's Suppl. Br. at 5 (quoting *Great Am. Ins. Co. v. Superior Ct.*, 100 Cal. Rptr. 3d 258, 271 (Ct. App. 2009), Nautilus fails to argue that it has or would in fact continue to pay defense costs relating to the underlying litigation or that it would be unable to seek contribution from other insurers that may be defending Acacia.[2] Without further explanation by Nautilus, the Court has no way of knowing

---

[2] For the first time, Nautilus claimed at oral argument that it would be unable to recover reimbursement from the other insurers that are defending Acacia in the underlying lawsuits, citing the doctrine of equitable conversion. The Court acknowledges the possibility of merit in that claim. *See Atl. Mutual Ins.*

whether Nautilus's coverage counsel is leading the charge into the upcoming state court trial, or whether they are merely standing on the sideline. This is precisely the information the Court desired when it ordered supplemental briefing. *See* Supp. Br. Order at 2 ("[T]he Court lacks critical information about the underlying state court trial that would aid in understanding what hardships may ensue if a stay is not entered[.]"). On the present record, Nautilus has not established that any prejudice would result from being forced to continue representing Acacia as it is uncontroversial that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyear v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

Fortunately for the Court, Acacia filled in some of the gaps left by Nautilus. Acacia disclosed that it "presently is being defended in the underlying litigation, by three insurers, Toko Marine, Everest Insurance and Nautilus Insurance Company (the plaintiff in this action)." Declaration of Dennis J. Wickham ("Wickham Decl.") ¶ 3, ECF No. 20-1. Acacia also confirmed, as it had represented in its Opposition, that the underlying trial "is scheduled to begin on January 5, 2025[,]" and that "the trial judge has blocked out the time needed for the trial," which is scheduled to last 30 to 45 days. *Id.* ¶ 2.

The Court appreciates the forthright disclosures in Defendant's Supplemental Brief, but those disclosures confirm that Defendant has not met its "burden of showing that the circumstances justify" a stay. *Hoffmann v. Price*, No. 1:15-cv-1527 DB P,

---

*Co. v. J. Lamb, Inc.*, 123 Cal. Rptr. 2d 256, 274 (Ct. App. 2002) ("The right arises when one of two or more insurers are '*obligated to indemnify or defend*' the same loss or claim and one of those insurers has paid more than its share of the loss or defended the action without participation from the others." (emphasis in original) (quoting *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 77 Cal. Rptr. 2d 296 (1998))). But the Court is not satisfied that Nautilus has satisfactorily explained why the "similar [yet] distinct" doctrine of equitable subrogation would not apply, at least with respect to its defense costs. *See Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 77 Cal. Rptr. 2d 296, 302–06 (discussing the differences between equitable contribution and equitable subrogation). Considering the "confusion and headache" that these two doctrines have caused the courts and the fact that the doctrines were not raised in the briefs, the Court declines to analyze them more fully at this time. *Id.* at 302. And in any event, putting these doctrines aside, "the benefit or risk of the availability of such other coverage appears to fall *equally* on both the insureds and [the insurer] . . . ." *Great Am. Ins. Co.*, 100 Cal. Rptr. 3d at 272. So the Court does not consider the effect of these doctrines on the prejudice Nautilus may suffer if a stay is entered.

2019 WL 498991, at *3 (E.D. Cal. Feb. 8, 2019).  As far as the Court can tell from the Supplemental Briefs, resolving the litigation in the instant matter would present little to no disturbance to the underlying litigation.  Acacia concedes that it has other insurers' attorneys representing it in state court and concedes that the availability of alternative counsel "is not a concern here."  Def.'s Suppl. Br. at 8.[3]  In other words, nothing that happens in this Court would alter the probability of the January 2025 trial going ahead as planned, allowing the state court plaintiffs—who initiated their lawsuits as early as 2017—to pursue their claims without further delay.  Therefore, the Court does not detect any potential prejudice to Defendant—or the public at large—by resolving the instant lawsuit.[4]

Moreover, the Court rejects Defendant's argument that it should not have "to fight a two-front war, litigating not only with the underlying claimant, but also expending precious resources fighting an insurer over coverage questions . . . ."  Def.'s Suppl. Br. at 5.  The two-front war dilemma derives from the insured being put in the position of simultaneously litigating the underlying lawsuit "while at the same time devoting its money and its human resources to litigating coverage issues with its carriers."  *Montrose Chem. Corp. v. Superior Ct.*, 31 Cal. Rptr. 2d 38, 43 (Ct. App. 1994).  The instant lawsuit was filed on November 9, 2023, and fact discovery closed on August 22, 2024.  *See* ECF No. 9 at 2.  Acacia did not raise the prospect of a stay until its Opposition to Nautilus's Motion for Summary Judgment, which Acacia filed on August 27, 2024.  *See* Opp'n.  At this advanced stage in the litigation, after fact discovery has closed, Defendant's Motion for Stay amounts to "an eleventh-hour request" that "rings glaringly hollow."  *Hoffmann*, 2019 WL 498991, at *5.

In sum, all of the *Brillhart* factors weigh against granting a stay, and Acacia has failed to meet its burden of demonstrating that the particular circumstances in this case

---

[3] Acacia had nothing to add when given the opportunity to comment at oral argument.

[4] At oral argument, Acacia argued that it would be prejudiced if the Court denies the stay and grants Nautilus's summary judgment *in the event that Acacia is ultimately not held liable in the underlying actions for any habitability violations*.  But Acacia's liability in the underlying actions is entirely distinct as a factual matter from whether Nautilus has the obligation to provide coverage or indemnification.

justify the Court using its inherent discretion to order a stay.  Accordingly, the Court **DENIES** Acacia's Motion for Stay.

> ### B.   Claims 1–2: Declaratory Relief of No Duty to Defend and No Duty to Indemnify

Moving to the Motion for Summary Judgment, Nautilus raises one simple argument: Under California law, which controls its insurance coverage obligations as they apply to the underlying actions, it had no duty to defend or indemnify.  Nautilus identifies a lengthy list of habitability issues at the Park alleged in *Delacruz I* and *Delacruz II*, as well as "violations of at least twelve sections of the Mobilehome Residency Law . . . at least six sections of the Mobilehome Parks and Installations Regulations . . . and at least ten sections of the Mobilehome Parks Act."  Mot. Mem. at 11.  Because the Habitability Exclusion in the Policy contains a catch-all provision that expressly precludes coverage "in any action or proceeding alleging damages arising out of [habitability conditions]," Nautilus reasons that coverage in the underlying actions must be excluded in its entirety.  *Id.* at 12.  It relies primarily on *24th and Hoffman v. Northfield Insurance Co.*, 298 Cal. Rptr. 3d 816 (Ct. App. 2022), to demonstrate that California courts have enforced similar catch-all provisions, so the Court should do the same here.  Mot. Mem. at 15–16.

Acacia counters that "the primary thrust of the underlying plaintiffs' claims is not habitability," so the Habitability Exclusion is widely inapplicable.  Opp'n at 8.  Thus, according to Acacia, this case presents what California courts call a "mixed" action in which insurers have a duty to defend an entire action if it includes even a single claim that is possibly covered under the insurance policy.  *Id.* at 18.  Acacia distinguishes the Policy from the one in *24th and Hoffman* on the basis of differences in the exclusion language.  *Id.* at 17.

Nautilus responds that Acacia misrepresents the nature of the claims in the underlying lawsuits by ignoring key facts that bring each of them within the sweep of the Habitability Exclusion.  Reply at 5–8.  But even if each claim individually does not fall within the Exclusion, then, at a minimum, the action as a whole does under the catch-all

provision. *Id.* at 8–10. Nautilus argues that the Habitability Exclusion is "plain and clear," and that Acacia has no way of evading the parallels between this case and *24th and Hoffman*. *Id.* at 9.

In California, "[t]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 795 (Cal. 1993) (en banc). The duty to defend "extends beyond claims that are actually covered" to include those that are only *potentially* covered. *Buss v. Superior Court*, 939 P.2d 766, 773 (Cal. 1997). However, if the insurer can present proof "that the underlying claim cannot come within the policy coverage by virtue of the scope of the insuring clause or the breadth of an exclusion," it can "escape the defense duty altogether." *Montrose Chem. Corp. v. Superior Ct.*, 861 P.2d 1153, 1161 (Cal. 1993) (en banc) ("*Montrose*").

As a general rule, "the insurer has a duty to defend as to the claims that are at least potentially covered, but not as to those that are not." *Buss*, 939 P.2d at 775. This obligation does not exist "in the air," but rather is rooted in the contractual obligations of the insurer. *Id.* However, in *Buss*, the California Supreme Court went on to explain "that, in a 'mixed' action, the insurer has a duty to defend the action in its entirety." *Id.* (first citing *Horace Mann*, 846 P.2d 792 (Cal. 1993) (en banc); and then citing *Hogan v. Midland Nat'l Ins. Co.*, 476 P.2d 825 (Cal. 1970) (en banc)). A "mixed" action is one "in which some of the claims are at least potentially covered and the others are not." *Id.* at 774. This broader duty was justified as a prophylactic measure imposed by law to ensure that the insurer would provide a meaningful defense in the case where at least some claims were potentially covered. *Id.*

Although "[i]n the insurance context, [California courts] generally resolve ambiguities in favor of coverage . . . [and] interpret the coverage clauses of insurance policies broadly," *AIU Ins. Co. v. Superior Court*, 274 Cal. Rptr. 820, 822 (1990), they "do not add to, take away from, or otherwise modify a contract for 'public policy considerations.'" *Aerojet-General Corp. v. Transport Indem. Co.*, 948 P.2d 909, 932 (Cal.

1997). Thus, courts interpret insurance coverage by giving the provisions their "clear and explicit meaning . . . unless used by the parties in a technical sense or a special meaning is given to them by usage." *24th and Hoffman*, 298 Cal. Rptr. 3d at 822 (internal quotations omitted).

Perhaps in response to these background legal principles, insurers have sought a clever workaround to avoid their duty to defend "mixed" actions. Faced with the broad duty under *Buss*, insurers have rewritten their policies to include catch-all provisions that essentially exclude the "mixed" action from coverage entirely. These catch-all provisions operate to effectively render an entire lawsuit uncovered if even a single claim within the lawsuit alleges damages that fall within the exclusion.

The case *S.B.C.C. v. St. Paul Fire & Marine Insurance Co.*, illustrates the point. 112 Cal. Rptr. 3d 40 (Ct. App. 2010). There, an insurer provided general liability insurance to a construction company who was sued for trade secret misappropriation, intentional interference with prospective economic advantage, unfair competition, and interference with contract. *Id.* at 42–43. The insurer denied coverage in the underlying lawsuit, citing an intellectual property exclusion that disclaimed coverage for "injury or damage or medical expenses that result from any actual or alleged infringement or violation of [intellectual property laws]." *Id.* at 46. The exclusion did not stop there, however, as it also contained a catch-all provision that disclaimed coverage for "any other injury or damage that's alleged in any claim or suit which also alleges any such [intellectual property law violation]." *Id.* The court held that the policy in question did not provide coverage in the underlying lawsuit because "the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage*." *Id.* at 51 (emphasis in original) (quoting *Montrose*, 861 P.2d at 1153). In other words, the single claim of trade secret misappropriation triggered the catch-all provision, thereby bringing the entire lawsuit within the scope of the exclusion. *Id.*

The court applied the same logic to a habitability exclusion in *24th and Hoffman*, a case upon which Nautilus heavily relies. 298 Cal. Rptr. 3d 816 (Ct. App. 2022). In that

case, a real estate developer purchased general liability insurance that covered bodily injury, property damage, and personal injury, but excluded coverage for claims arising out of, among other things, the alleged failure "to maintain a premises in a habitable condition." *Id.* at 821. The insurance policy, like the one in *S.B.C.C.*, contained a catch-all provision that excluded claims "alleged in any claim or 'suit' that also alleges a [habitability violation]." *Id.*

The underlying lawsuit in *24th and Hoffman* brought claims alleging a breach of habitability, conversion, and trespass to chattels, the latter two of which the court assumed for purposes of the discussion did not implicate the duty to provide habitable premises. *Id.* at 825. Against the wishes of the insured, the court declined to categorize the lawsuit as a "mixed" action under *Buss* because of the catch-all provision, which brought the entire lawsuit within the scope of the habitability exclusion. *Id.* at 826–28. The court thus held that "[t]he rule of *Buss*," which imposed a duty to defend a "mixed" action, was inapplicable due to the catch-all provision. *Id.* at 828. In reaching this conclusion, the court "recognize[d] the oddity of an insurance contract that covers certain claims against the insured if those claims are filed in a lawsuit on their own, and not if such claims are brought in a suit that also alleges habitability claims," but it could point to "no California authority that prevents the parties from contracting for such coverage." *Id.*

The Court finds that the above cases dictate the outcome here. Although the Parties quibble over the extent to which some or all of the claims in the underlying lawsuits fall within the exclusion for certain of the habitability conditions, an in-depth analysis of the factual allegations in the underlying complaints is needless. The Parties are in agreement that the underlying lawsuits allege at least some damages that arise out of Acacia's failure to maintain the Park in a habitable condition.[5] *See* Opp'n at 6 (acknowledging that one of

---

[5] Acacia suggests at one point in its Opposition that the Habitability Exclusion is inapplicable to all of the allegations in the underlying lawsuits because the tenant-plaintiffs own their own mobile homes and only rent the exterior of their spaces from Nautilus. *See* Opp'n at 7. But Acacia does not cite any authority for the proposition that habitability laws do not apply to a mobile park owner like Nautilus, and, in any event, Acacia concedes that the underlying lawsuits bring claims for breach of warranty of habitability. *See id.*

the causes of action is for breach of warranty of habitability, which alleges a failure to maintain the Park in a safe and habitable condition).[6]  These allegations, then, trigger the first part of the Habitability Exclusion, which excepts from coverage "damages or expenses . . . arising out of or resulting from the alleged or actual . . . failure of any insured to maintain any premises in, or restore any premises to, a safe, sanitary, healthy, habitable, or tenantable condition."  Policy at 49.

The question next becomes whether this allegation unavoidably triggers the catch-all provision, which eliminates Nautilus's "duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of the [habitable conditions]."  *Id.*  The answer is plainly yes.  Acacia's Opposition recites general principles of contract interpretation such as the proposition that "exclusions are construed narrowly against the insurer" and that "[w]here the exclusion is reasonably susceptible to more than one meaning, the ambiguity is resolved against the insurer and in favor of coverage."  Opp'n at 9 (first citing *Vargas v. Athena Assurance Co.*, 115 Cal. Rptr. 2d 426 (Ct. App. 2001); and then citing *Smith Kandal Real Estate v. Cont'l Cas. Co.*, 79 Cal. Rptr. 2d 52 (Ct. App. 1998)).  But Acacia does not identify any ambiguity in the catch-all provision, nor is the Court able to discern any.

The catch-all provision applies to "any action or proceeding" and, although those terms are left undefined by the Policy, the underlying lawsuits fall within the ordinary meaning of those terms.  *See Action*, Black's Law Dictionary (12th ed. 2024) (defining an "action" as "[a] civil or criminal judicial proceeding"); *Proceeding*, Black's Law Dictionary (12th ed. 2024) (defining a "proceeding" as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement

---

at 6.  Whether habitability laws apply to mobile park owners is a matter for the state court to take up in the underlying lawsuits and has no applicability to Nautilus's coverage obligations under the Policy.

[6] This admission renders moot Acacia's invocation of *Green v. Superior Court of San Francisco*, 517 P.2d 1168 (Cal. 1974), which defines "habitability" under California law.

and the entry of judgment").  If within said action or proceeding there exist at least some damages that arise out of alleged habitability violations, then the entire action or proceeding satisfies the conditions of the catch-all provision and the result is the exclusion of all claims therein.

Though couched in slightly different language, the Habitability Exclusion effects the exact same scope as the one in *24th and Hoffman*, a case which the Court finds persuasive.[7] Acacia tries to distinguish that case because the catch-all provision there excluded coverage for claims "alleged in any claim or suit that *also alleges* any violation . . . [of the habitability claims]," Opp'n at 10 (emphasis in original), but the Court fails to see how the "also alleges" language could have legal significance that changes the outcome of this case. The exclusion in *24th and Hoffman* might operate to exclude individual claims one by one as opposed to the Habitability Exclusion which operates to exclude an entire lawsuit in one fell swoop, but "if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning."  *AIU*, 274 Cal. Rptr. at 822.  Here, there is no ambiguity to be found in the catch-all provision, so the Court takes the contract language as it finds it.  *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995) ("Courts will not strain to create an ambiguity where none exists.").

In fact, Acacia's reading of the catch-all provision contravenes California's statutory directive that "[c]ontracts are interpreted as a whole '*so as to give effect to every part*, if reasonably practicable, each clause helping to interpret the other.'"  *Schertzer v. Bank of Am., NA*, 109 F.4th 1200, 1210 (9th Cir. 2024) (emphasis added) (quoting Cal. Civ. Code § 1641).  At oral argument, the Court asked Acacia what meaning it should attribute to the

---

[7] Acacia argues that *24th and Hoffman* is nothing more than a mere datum because the California Supreme Court has not ruled on this exact issue.  Opp'n at 10 n.14.  But when a federal court is sitting in diversity and applying state law, the decision of an intermediate state appellate court "is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."  *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).  For the reasons explained in this Order, the Court finds *24th and Hoffman* to be consistent with the reasoned judgments of the California Supreme Court.

catch-all provision if not the one advocated by Nautilus.  In response, Acacia urged that the catch-all provision merely restates the background notion that covered claims would be covered while uncovered claims would not be covered.  In other words, Acacia argues that the catch-all provision is superfluous, not adding anything to nor detracting anything from the Policy.  The Court is not persuaded that Acacia's strained interpretation rises to the level of creating an ambiguity, particularly in the face of longstanding canons of interpretation that suggest otherwise.  *See Mickle v. Sanchez*, 1 Cal. 200, 202 (1850) (construing a contract "so as to give effect, if possible, to all parts of it" where an alternative reading would render the clause "senseless" because "the condition would mean the same without it, as it means with it").  Though not dispositive of the Court's interpretation that the catch-all provision is unambiguous, this interpretive gloss merely bolsters the reasoning of the court in *24th and Hoffman* and the myriad others reaching the same conclusion.

Acacia advances the argument that the catch-all provision would be illusory if given the meaning advocated for by Nautilus, but that argument has been rejected time and time again.  The "also alleges" language has been interpreted to exclude entire suits from coverage in a number of cases, *see, e.g.*, *Northfield Ins. Co. v. Hudani*, No. 2:20-cv-01695-SB (Ex), 2021 WL 3556672, at *4 (C.D. Cal. Mar. 16, 2021); *Ventana Med. Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 709 F. Supp. 2d 744, 757–58 (D. Ariz. 2010); *Molecular Bioproducts, Inc. v. St. Paul Mercury Ins. Co.*, No. 03-0046-IEG(LSP), 2003 WL 23198852, at *5 (S.D. Cal. July 9, 2003), and at least one court has reached the same conclusion when interpreting language nearly identical to that of the catch-all provision at issue here.  *See Great Am. E & S Ins. Co. v. Theos Med. Sys., Inc.*, 357 F. Supp. 3d 953, 969–70 (N.D. Cal. 2019) (applying an intellectual property exclusion to the entire underlying action where the catch-all provision excluded coverage for "[a]ny claim or 'suit' that alleges [certain injuries related to intellectual property violations]"), *aff'd*, 799 F. App'x 539 (9th Cir. 2020) (unpublished opinion).  Acacia points to no authority suggesting otherwise, Opp'n at 16–17, and it is a "fundamental goal of contractual interpretation . . . to give effect to the mutual intention of the parties."

*S.B.C.C.*, 112 Cal. Rptr. 3d at 44.

Finally, Acacia argues that the Habitability Exclusion "must be 'conspicuous, plain and clear to be enforceable,'" Opp'n at 16 (citing *State Farm Mut. Auto Ins. Co. v. Jacober*, 514 P.2d 953 (Cal. 1973)), but those criteria are satisfied here. The Habitability Exclusion is listed in the Schedule of Forms and Endorsements at the beginning of the Policy, Policy at 4, and it is prominently displayed on its own page with the title "HABITABILITY EXCLUSION" in bold and all-caps, *id.* at 49. The Habitability Exclusion is not buried in a misleading manner or otherwise inconspicuous to the reader. Acacia does not elaborate on what other features of the Habitability Exclusion might be lacking that would make the provision unenforceable, so the Court declines Acacia's invitation down that path. *See 24th and Hoffman*, Cal. Rptr. 3d at 823–24 (finding a habitability exclusion plain and clear where it was contained in its own prominently labeled exclusion that applied to each form of injury covered).

All said, the Court acknowledges the somewhat fickle state of affairs created by the proliferation of broad catch-all provisions in insurance contracts, which are a tidy way to avoid the duty to defend imposed by *Buss* and its progeny. But where "the pertinent [insurance] policies provide what they provide," it is simply the Court's role to enforce those policies. *See Aerojet-General*, 948 P.2d at 932. Accordingly, the Court **GRANTS** Nautilus's request for a declaration that Plaintiff had no duty to defend or indemnify Acacia in the underlying lawsuits.

### C.    Claims 3–4: Declaratory Relief of Reimbursement for Defense Expenses and Reimbursement for Indemnification Expenses

Nautilus's remaining claims follow in a lockstep manner after it is decided that Nautilus owed no duty to defend or indemnify Acacia in the underlying lawsuits. The Court concluded above that none of the claims asserted against Acacia were potentially covered by the Policy. "As to . . . claims that are not even potentially covered . . ., the insurer may indeed seek reimbursement for defense costs." *Buss*, 939 P.2d at 776 (canvassing the plethora of cases holding as much). The only prerequisite for doing so is

an express reservation of rights, which the insurer can effectuate "unilaterally merely by giving notice to the insured." *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489, 498 (2001).

Here, Nautilus expressly reserved its right to seek reimbursement in its September 20, 2023, email correspondence to Acacia. In the email, Nautilus's coverage counsel for the consolidated *Delacruz* actions "agree[d] to defend [Acacia] under a full and complete reservation of rights." Rsrv. of Rts at 2. The memo that was included in the reservation of rights thoroughly summarized the underlying litigation, the Policy, and the numerous provisions under which Nautilus was reserving its rights. *See generally* Rsrv. of Rts. Included in those provisions was the Habitability Exclusion, under which Nautilus "reserve[d] all rights to deny coverage for damages sought that fall within the Habitability Exclusion." *Id.* at 13.

"By accepting [Nautilus's] defense under these circumstances, [Acacia] is deemed to have accepted this condition." *Blue Ridge*, 25 Cal. 4th at 498. Acacia advances vague arguments in its Opposition that Nautilus should not be allowed to withdraw after having already agreed to the representation, *see* Opp'n at 18–19, but the Court interprets these arguments to more closely track Acacia's request for a stay than its argument that Nautilus is not entitled to reimbursement. Indeed, nowhere does Acacia dispute the legitimacy of Nautilus's reservation of rights and it conceded at oral argument that if the Court were to rule in Nautilus's favor on Claims 1 and 2 that the unavoidable result was that Nautilus should also prevail on Claims 3 and 4. Accordingly, the Court finds that Nautilus effectively reserved its right to seek reimbursement, and the Court **GRANTS** Nautilus's request for a declaration that Plaintiff is entitled to reimbursement for defense and indemnification expenses related to the underlying lawsuits.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** both Plaintiff and Defendant's Requests for Judicial Notice, **DENIES** Defendant's Motion for Stay (ECF No. 15) and

/ / /

/ / /

**GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 11) as outlined above. The Clerk of Court is ordered to enter judgment in favor of Plaintiff.

   **IT IS SO ORDERED.**

Dated:  November 7, 2024

           *Janis L. Sammartino*
           Hon. Janis L. Sammartino
           United States District Judge

23-CV-2072 JLS (SBC)